[No. B109343. Second Dist., Div. Two. Aug. 21, 1997.]

LOURDES BARAJAS et al., Plaintiffs and Appellants, v.
OREN REALTY AND DEVELOPMENT COMPANY, Inc., et al.,
Defendants and Respondents.

COUNSEL

Frandzel & Share and Robb M. Strom for Plaintiffs and Appellants.

Koletsky, Mancini, Feldman & Ryan, Roy A. Koletsky and Stacey R. Friedman for Defendants and Respondents.

## OPINION

**ZEBROWSKI, J.**—This case concerns statements made and information discussed during a mediation. By statute, such statements and information are neither discoverable nor admissible. (Evid. Code, § 1152.5 (section 1152.5), subd. (a)(1).) Moreover, such statements and information "shall remain confidential." (§ 1152.5, subd. (a)(3) ["all communications, negotiations, or settlement discussions by and between participants or mediators . . . in the mediation *shall remain confidential*." (Italics added).].)

The case arises because plaintiffs' attorney became involved in two related lawsuits against the same defendant. The first lawsuit was successfully mediated. The attorney then associated in as counsel for the plaintiffs in the second lawsuit. Defendant then moved to disqualify the attorney in the second lawsuit. The trial court interpreted section 1152.5 to require disqualification in the second lawsuit because the attorney had earlier participated in mediation of the first lawsuit. Plaintiffs now appeal the disqualification. We conclude that an attorney who mediates one case is generally not disqualified from litigating later cases against the same party. The order disqualifying plaintiffs' attorney will therefore be reversed.

### A. BACKGROUND.

Prior to the Northridge earthquake, Oren Realty and Development Company, Inc. (the builder) built an apartment building. Southern California Federal Savings and Loan Association (the bank) made a loan secured by the building. The building was severely damaged in the earthquake and has since been demolished. The loan was not paid.

The bank sued the builder and others involved in the construction to recover the money loaned (the bank action). The tenants of the apartment building also sued the builder and others for property damage (the tenant action). Thus two cases were pending against the builder simultaneously: the bank action and the tenant action. The instant case is the tenant action.

In the bank action, the bank was represented by attorney Robb M. Strom and the law firm of Frandzel & Share (collectively Attorney Strom). It was the bank action that was mediated. Attorney Strom represented the bank at the mediation. The bank action settled in June of 1996, leaving only this tenant action still pending.

An additional factor that the builder finds significant is that the bank was initially also named as a defendant in this tenant action. Attorney Strom also represented the bank (as a defendant) in this tenant action. However, the bank was not involved in construction of the building and obtained summary judgment of no liability early on. By August of 1996, the bank had obtained summary judgment in this tenant action and the bank action had settled. The bank and Attorney Strom were therefore no longer involved in either the bank action or the tenant action. Attorney Strom was then contacted by plaintiffs' original counsel in this tenant action. Plaintiffs' original counsel invited Attorney Strom to associate in as cocounsel for the plaintiffs. After consulting with the bank (his prior client), Attorney Strom associated in as cocounsel for plaintiffs in this tenant action.

In October of 1996, the builder (plus suppliers and other parties who had participated in construction of the building) moved for an order disqualifying Attorney Strom from representing plaintiffs in this tenant action. The motion was based on various theories, but not expressly upon section 1152.5.[1] At the hearing on the motion, the court sua sponte raised section 1152.5 as a basis for disqualification and stated that it was focusing on the requirement that mediation discussions be "absolutely confidential."[2] The court also noted that "the defendants [the builder and others involved in the construction] feel that they will be prejudiced by your [Attorney Strom] knowing of

---

[1]The builder advanced three theories for disqualification: (a) that Attorney Strom had represented the builder's lender, and had in that capacity supposedly obtained "private and privileged material" regarding the builder's assets, (b) that Attorney Strom had represented the bank as defendant in the tenant action, "has now effectively worked on both sides of this action" and hence had a "conflict of interest," the precise nature of which was not clearly stated, and (c) that by participating in mediation, Attorney Strom had gained knowledge of matters relevant to the tenant action, although section 1152.5 was not cited in support of this proposition.

Theory (a) did not support disqualification for several reasons. First, there was no showing of what confidential information Attorney Strom might have obtained through his representation of the bank. Moreover, evidence regarding the loan application, etc., was elicited in discovery by the builder and disclosed to several parties. Second, there was no showing how any such information about the builder's assets was or could possibly be relevant to the claims made by the tenants in this tenant action.

Theory (b) did not support disqualification because the bank always occupied a position adverse to the builder, even though the bank and the builder were at one time codefendants in this tenant action. At the same time that the bank was a codefendant in this tenant action, the bank was also suing the builder in the bank action. Hence there was no confidential relationship between the bank and builder.

The trial court did not rely on either theory (a) or theory (b). Instead, the trial court concluded that section 1152.5 disqualified Attorney Strom. Section 1152.5 is discussed in the text.

[2]This was an obvious reference to subdivision (a)(3) of section 1152.5, which provides that "all *communications, negotiations, or settlement discussions by and between participants or mediators . . . in the mediation shall remain confidential.*" (Italics added.)

the position taken in a confidential mediation." The court concluded by granting the motion to disqualify Attorney Strom, stating that "I think it's good public policy to encourage compliance with Evidence Code 1152.5, that if the parties are concerned about what they say at mediation proceedings and are not kept confidential [*sic*], we are going to have fewer settlements and the litigation will go on and on."

Since section 1152.5 had not been briefed in any of the motion papers, Attorney Strom moved for reconsideration. Reconsideration was denied without comment.

The trial court's ruling was thus based on the proposition that, in order to promote full disclosure at a mediation, section 1152.5 mandates that an attorney who represents a plaintiff in a mediation is disqualified from representing a different plaintiff in a related case against the same defendant. The question is whether the Legislature intended this in enacting section 1152.5.

## B. DISCUSSION.

### 1. *The Implications of the Trial Court's Ruling.*

■■■ A preliminary examination of the consequences of the trial court's ruling provides practical context. The trial court concluded that disqualification of plaintiffs' attorney was mandated by statute to encourage defendants to be candid during mediation. While such an interpretation might encourage defendants to be forthcoming, it would also discourage plaintiffs from agreeing to mediate. The expectable net effect would be to inhibit agreements to mediate, since both sides must agree. By contrast, the language and history of section 1152.5, summarized below, reflect an intent to promote and encourage mediation. The necessary implications of a mediation-disqualification rule cast preliminary doubt on the trial court's ruling, because mediation would be stifled in many areas if this were the law:

(a) *Mass Torts:* Mediation would be discouraged in cases alleging toxic personal injury (e.g., asbestosis, toxic migration from disposal pits, spill litigation, "DDT" exposure, Agent Orange, fuel or chemical leaks, etc.), mass pharmaceutical injury (e.g., Bendectin, etc.), defective medical devices (e.g., Dalkon Shield, breast implants, etc.), injuries from mass disasters (hotel fires, airplane crashes, structural failures, etc.), mass financial frauds and other mass torts. Such cases often involve many plaintiffs, but commonly at most a few defendants. An attorney handling mass torts who mediated one case would thereafter be vulnerable to disqualification in any other case against the same defendant.

(b) *Product Liability:* An attorney handling product liability cases who mediated one case would thereafter be vulnerable to disqualification in other cases against the same manufacturer or distributor, possibly even in cases involving different products, since common or related issues of quality and cost control, design procedures, distribution methods, advertising and instruction manuals, internal organization, etc., could arguably be involved.

(c) *Employment Cases:* An attorney handling employment cases who mediated one case would thereafter be vulnerable to disqualification in other cases against the same employer, since common or related issues of personnel management practices, workforce composition, institutional history, etc., could arguably be involved.

(d) *Insurance Coverage and Bad Faith Cases:* An attorney handling insurance coverage or bad faith cases who mediated one case would thereafter be vulnerable to disqualification in other cases against the same carrier, since common or related issues of underwriting standards, policy interpretation, claims handling practices, etc., could arguably be involved.

(e) *Civil Rights Litigation:* An attorney handling civil rights cases against public entities who mediated one case would thereafter be vulnerable to disqualification in other cases against the same public entity, since common or related issues of official policy, hiring standards, management practices, etc., could arguably be involved.

(f) *Lender Liability or Other Financial Litigation:* An attorney handling financial litigation who mediated one case would thereafter be vulnerable to disqualification in other cases against the same financial institution, since common or related issues of lending or collection practices, authorization to make agreements, etc. could arguably be involved.

(g) *Construction Cases:* An attorney handling construction cases potentially involving multiple plaintiffs (involving condominiums, tract developments, defective materials, common defective design, etc.) who mediated one case would thereafter be vulnerable to disqualification in other cases against the same builders, suppliers, designers, etc., since common or related issues of design and construction, etc., could arguably be involved.

Even the generic category of cases against insured defendants might be included. It could be argued that experienced counsel can gain insights into the claims handling, case evaluation, and settlement practices of different carriers by mediating cases covered by those carriers. The receipt of such information through mediation would, on this reasoning, make such counsel

vulnerable to disqualification, since such information "shall remain confidential." (§ 1152.5, subd. (a)(3).) Other categories of litigation could also be included in the types of mediation which would render counsel vulnerable to disqualification in later cases, but the listing above is illustrative. A mediation-disqualification rule could therefore reasonably be expected to have a significant depressing effect on willingness to participate in mediation. This likely depressing effect, as compared with the legislative intent to encourage mediation, is a preliminary indication that the statute was not properly applied in this case.

### 2. *The Implications for Cases Involving Unsuccessful Mediation.*

If disqualification in different-but-related cases after mediation were required, it seems that disqualification in the *very same* case would necessarily also be required after an unsuccessful mediation. Yet this is contrary to long-established practice. When mediation fails to achieve settlement, the same attorneys who handled the case before and during the mediation commonly continue to handle the case thereafter through trial and beyond. But if disqualification in a different case is required after mediation, an even stronger case exists for disqualification in the same case after mediation. An attorney who participates in an unsuccessful mediation discusses information relating directly to the very case being litigated. If the mediation-disqualification interpretation applied in the trial court were correct, then consistency would require that any counsel who participates in an unsuccessful mediation would thereafter be disqualified from further participation in the case mediated.

A conclusion of this kind would certainly discourage commencement of mediation in the first instance, yet it flows with inexorable logic from the mediation-disqualification interpretation applied in the trial court. This is a further indication that the trial court's ruling was not correct.

### 3. *Section 1152.5.*

Section 1152.5 provides that evidence of anything said in a mediation is generally not discoverable or admissible (subd. (a)(1)), that documents prepared for mediation are generally not discoverable or admissible (subd. (a)(2)), and that "all communications, negotiations, or settlement discussions" in a mediation "shall remain confidential" (subd. (a)(3)).[3] Except for the "shall remain confidential" language, there is nothing in section 1152.5 that could be construed to require or support the disqualification of an

---

[3] Section 1152.5 reads in full as follows: "(a) When a person consults a mediator or mediation service for the purpose of retaining the mediator or mediation service, or when

attorney simply because he or she had earlier participated in mediation. Resolution of this case thus requires determination of whether the "shall remain confidential" language requires or supports attorney disqualification.

■ The goal of statutory construction is to ascertain and apply the intent of the Legislature. (See, e.g., *People* v. *Pieters* (1991) 52 Cal.3d 894, 898-899 [276 Cal.Rptr. 918, 802 P.2d 420].) " ' "In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import . . . . The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both

persons agree to conduct and participate in a mediation for the purpose of compromising, settling, or resolving a dispute in whole or in part:

"(1) Except as otherwise provided in this section, evidence of anything said or of any admission made in the course of a consultation for mediation services or in the course of the mediation is not admissible in evidence or subject to discovery, and disclosure of this evidence shall not be compelled, in any civil action or proceeding in which, pursuant to law, testimony can be compelled to be given.

"(2) Except as otherwise provided in this section, unless the document otherwise provides, no document prepared for the purpose of, or in the course of, or pursuant to, the mediation, or copy thereof, is admissible in evidence or subject to discovery, and disclosure of such a document shall not be compelled, in any civil action or proceeding in which, pursuant to law, testimony can be compelled to be given.

"(3) When a person consults a mediator or mediation service for the purpose of retaining the mediator or mediation service, or when persons agree to conduct or participate in mediation for the sole purpose of compromising, settling, or resolving a dispute, in whole or in part, all communications, negotiations, or settlement discussions by and between participants or mediators in the course of a consultation for mediation services or in the mediation shall remain confidential.

"(4) All or part of a communication or document which may be otherwise privileged or confidential may be disclosed if all parties who conduct or otherwise participate in a mediation so consent.

"(5) A written settlement agreement, or part thereof, is admissible to show fraud, duress, or illegality if relevant to an issue in dispute.

"(6) Evidence otherwise admissible or subject to discovery outside of mediation shall not be or become inadmissible or protected from disclosure solely by reason of its introduction or use in a mediation.

"(b) This section does not apply where the admissibility of the evidence is governed by Section 1818 or 3177 of the Family Code.

"(c) Nothing in this section makes admissible evidence that is inadmissible under Section 1152 or any other statutory provision, including, but not limited to, the sections listed in subdivision (d). Nothing in this section limits the confidentiality provided pursuant to Section 65 of the Labor Code.

"(d) If the testimony of a mediator is sought to be compelled in any action or proceeding as to anything said or any admission made in the course of a consultation for mediation services or in the course of the mediation that is inadmissible and not subject to disclosure under this section, the court shall award reasonable attorney's fees and costs to the mediator against the person or persons seeking that testimony.

"(e) Paragraph (2) of subdivision (a) does not limit the effect of an agreement not to take a default in a pending civil action."

internally and with each other, to the extent possible. [Citations.] Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation. [Citation.] Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent." ' " (*Central Pathology Service Medical Clinic, Inc.* v. *Superior Court* (1992) 3 Cal.4th 181, 186-187 [10 Cal.Rptr.2d 208, 832 P.2d 924]; see also *People* v. *Cruz* (1996) 13 Cal.4th 764, 782 [55 Cal.Rptr.2d 117, 919 P.2d 731].)

The statute itself provides no indication of the purpose or meaning of the "shall remain confidential" language beyond the provisions barring discovery and admissibility. To the extent that the provisions barring discoverability and admissibility are considered insufficient to clarify the nature of the confidentiality intended, the consequences of a particular interpretation, the legislative history and the wider historical circumstances surrounding enactment of section 1152.5 can provide further guidance. The necessary consequences of a mediation-disqualification rule have been reviewed above. With regard to legislative history and surrounding circumstances, Attorney Strom filed in support of his motion for reconsideration the declarations of several persons either knowledgeable regarding or involved in the legislative process: Senator Lockyer (who sponsored the bill which amended section 1152.5 into its present form), Angela S. Haskins (former director of the American Arbitration Association Center for Mediation in Los Angeles), Nancy Drabble (acting executive director and legislative counsel for Consumer Attorneys of California) and Larry Burton (executive director of the Los Angeles County Bar Association Dispute Resolution Services). These declarations opined in essence that section 1152.5 was intended to promote mediation and was not intended to require or support the ruling made by the trial court.

The postenactment opinions of even such well-positioned individuals are dubious proof of the intent of the full Legislature, but the declarations do serve to illuminate the surrounding historical circumstances. It is noteworthy that nothing in the legislative history or elsewhere indicates anything contrary to the declarations of these individuals. Nowhere is there an indication that the Legislature intended to require or support disqualification rulings of the type involved here. Instead, the legislative history reflects two primary measures for protecting the confidentiality of mediation discussions and documents: Such discussions and documents are neither discoverable nor admissible in evidence. These two protective measures were specifically

written into the statute. (§ 1152.5, subd. (a)(1) and (2).)[4] Otherwise, the language and legislative history reflects only a general intent to encourage attorneys and litigants to agree to mediation.

A mediation-disqualification rule is in conflict with the stated legislative intent of encouraging agreement to mediation. If the Legislature had intended an interpretation so in conflict with the goal of encouraging voluntary mediation, but nevertheless deemed it necessary (as the trial court theorized) to promote candor once mediation was chosen, there would likely be some indication of such conflicting intents in the language or history of the statute. Nowhere is there any indication that the Legislature ever contemplated such an interpretation.[5] If the Legislature intended such a disqualification rule, it could of course have easily enacted it expressly. In view of the practical anti-mediation consequences of such a rule, it is not likely that the Legislature implicitly intended a disqualification rule simply because the Legislature used the words "shall remain confidential."

### 4. Common Mediation Practice.

The conclusion that the Legislature did not intend a mediation-disqualification rule is buttressed by mediation practices common at the time of enactment of section 1152.5. It has long been common mediation procedure for a mediator to obtain permission before disclosing confidential information to an opposing party. A mediation participant can therefore restrict disclosures to the other side by a) not making such disclosures itself and b) not authorizing the mediator to make such disclosures.[6] Whether or not this practice of limiting disclosure rises to the level of a "standard of care" or legally required practice, it is a common part of most mediation techniques and is at least an available procedure. Moreover, it is a common practice for counsel who participate in unsuccessful mediation to continue both to mediate and to litigate as the case progresses. The Legislature was presumably aware of such common practices when it considered how to encourage mediation and when it amended section 1152.5 for that purpose. Since a well-known method was available by which a party can make its own choice regarding disclosure of information, and since common practice allowed

[4]The statute also provides, in subdivision (d), for an award of attorney's fees against a party who seeks to compel testimony from a mediator.

[5]A survey of the legal literature regarding section 1152.5 specifically and the subject of mediation generally reveals no commentary on the proposition that that an attorney who mediates may thereafter be disqualified. The proposition that disqualification follows mediation is apparently unique to this case.

[6]Information is sometimes withheld in order to reserve it for impeachment at trial; to preserve tactical surprise; to avoid disclosing weaknesses of a legal, financial, psychological, or other type; or for some other reason.

counsel to mediate without disqualification, it is especially unlikely that the Legislature intended to create so significant a change as a mediation-disqualification rule without expressly so stating. An attorney may therefore participate in mediation without exposing himself or herself to disqualification in other cases.

## C. DISPOSITION.

The judgment (order disqualifying Attorney Robb M. Strom and Frandzel & Share as counsel for plaintiffs) is reversed. Appellants to recover costs on appeal.

Boren, P. J., and Nott, J., concurred.