[No. A113046. First Dist., Div. Three. Nov. 30, 2006.]

JOE DINO et al., Plaintiff, Cross-defendant and Appellant, v.
JESS PELAYO et al., Defendants, Cross-complainants and Respondents.

**Counsel**

Edward W. Suman for Plaintiff, Cross-defendant and Appellant.

Dana Dean for Defendants, Cross-complainants and Respondent.

**Opinion**

**PARRILLI, Acting P. J.**—This is an appeal from an order granting a motion by Jess and Rose Pelayo (Pelayos) to disqualify the attorney jointly representing their opponents, Joe Dino, doing business as Trust Realty Services (Dino) and Arthur and Isabel Eslava (Eslavas). As we explain below, we conclude the Pelayos lacked a valid basis for prevailing on their motion to disqualify Dino's attorney. We therefore reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 3, 2004, Dino sued the Pelayos to recover $89,500, the balance allegedly owed to him on a real estate commission. Dino hired Attorney Edward Suman (Suman) to represent him in the matter.

The complaint alleged Dino earned the real estate commission while acting as agent for both parties in the sale of the Pelayos' assisted living facility, Family Manor, to the Eslavas for $3 million (the first sale). Under the terms of the first sale, the Pelayos agreed to pay Dino's commission based upon payments they received on the purchase price from the Eslavas.

Following the first sale, however, the Eslavas were unable to acquire the necessary license to operate the facility. Accordingly, with Dino's assistance, the Eslavas sold the facility to Joseph and Juliana Taburaza (Taburazas) (the second sale). According to Dino's complaint, under the terms of the second sale, the Taburazas assumed from the Eslavas the outstanding balance owed to the Pelayos on the $3 million purchase price. The Pelayos remained responsible for the outstanding balance on Dino's commission for the first sale.

On October 22, 2004, the Pelayos filed a cross-complaint against Dino and the Eslavas. The cross-complaint alleged, among other things, that the Eslavas had agreed to assume the Pelayos' obligation to pay Dino's commission for the first sale, and that Dino had improperly failed to disclose to the Pelayos relevant information about the Eslavas that would have affected their decision to enter into that sale. The cross-complaint sought, among other things, indemnification from the Eslavas for the outstanding balance on Dino's commission, should the Pelayos be found liable to pay it.

The Eslavas requested that Suman represent them in the matter after confirming with Dino that no conflict of interest existed between them and after obtaining his permission. Suman explained to both parties that a conflict of interest could arise were he to represent them jointly in the same litigation. He thus requested they sign a waiver of claim of conflict of interest (waiver) before he would agree to the representation. Dino and the Eslavas signed the waiver, and Suman agreed to jointly represent them.

On February 25, 2005, the Eslavas filed a cross-complaint against the Pelayos, later amended, for breach of contract, duress and usury. The Eslavas also filed an answer to the Pelayos' cross-complaint in which, among other things, they denied assuming the obligation to pay the outstanding balance on Dino's commission for the first sale.

The litigation went forward, and the parties, among other things, exchanged written discovery and conducted several depositions. The parties also agreed to participate in mediation, which occurred for over six hours on July 28, 2005.

Following the all-day mediation, on August 10, 2005, the Pelayos filed a motion to disqualify Suman on the grounds that a conflict of interest existed between Dino and the Eslavas, and that their joint representation violated the Pelayos' right to mediate confidentially with each party. The trial court issued a tentative ruling granting the motion, which became a final order after Dino failed to timely contest it. Dino and the Eslavas then moved to vacate the order on September 23, 2006. The trial court denied their motion, and this appeal followed.

# DISCUSSION

Dino claims the disqualification order must be reversed because the Pelayos lacked standing to seek it. Dino further claims the order was improperly issued because no actual conflict of interest existed between him and the Eslavas, and because the Pelayos' motion was untimely and for an improper strategic purpose. He also challenges as incompetent the evidence upon which the order was based.

We agree the disqualification order must be reversed.

## A.  *Standard of Review*

The trial court has authority to grant a motion to disqualify an attorney pursuant to Code of Civil Procedure section 128, subdivision (a)(5).[1] (*DCH Health Services Corp. v. Waite* (2002) 95 Cal.App.4th 829, 831 [115 Cal.Rptr.2d 847] (*DCH Health Services*).)

The appellate court will not disturb the trial court's decision to grant or deny a disqualification motion absent an abuse of discretion. (*DCH Health Services, supra,* 95 Cal.App.4th at p. 832; *SpeeDee, supra,* 20 Cal.4th 1135, 1143.) Nor will the appellate court substitute its factual findings for the trial court's express or implied findings so long as they are supported by substantial evidence. (*SpeeDee,* at p. 1143.) "When substantial evidence supports the trial court's factual findings, the appellate court reviews the conclusions based on those findings for abuse of discretion. (*In re Complex Asbestos Litigation* [(1991)] 232 Cal.App.3d [572,] 585 [283 Cal.Rptr. 732].)" (*SpeeDee,* at p. 1144.) " 'The trial court's exercise of this discretion is limited by the applicable legal principles and is subject to reversal when there is no reasonable basis for the action. [Citations.]' " (*DCH Health Services, supra,* 95 Cal.App.4th at p. 832.)

In reviewing this order, we acknowledge the issue of disqualification impacts significant, sometimes conflicting, policy concerns. These concerns include a party's right to choose its own counsel, a client's right to confidentiality and trust, and the public's interest in "the scrupulous administration of justice and the integrity of the bar." (*SpeeDee, supra,* 20 Cal.4th at p. 1145.)

"On the one hand, a court must not hesitate to disqualify an attorney when it is satisfactorily established that he or she wrongfully acquired an unfair

---

[1] Under Code of Civil Procedure section 128, subdivision (a)(5), the trial court has inherent authority to " 'control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto.' " (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1145 [86 Cal.Rptr.2d 816, 980 P.2d 371] (*SpeeDee*).)

advantage that undermines the integrity of the judicial process and will have a continuing effect on the proceedings before the court. [Citations.] On the other hand, it must be kept in mind that disqualification usually imposes a substantial hardship on the disqualified attorney's innocent client, who must bear the monetary and other costs of finding a replacement. . . . [¶] Additionally, as courts are increasingly aware, motions to disqualify counsel often pose the very threat to the integrity of the judicial process that they purport to prevent. [Citation.] Such motions can be misused to harass opposing counsel [citation], to delay the litigation [citation], or to intimidate an adversary into accepting settlement on terms that would not otherwise be acceptable. [Citations.] In short, it is widely understood by judges that 'attorneys now commonly use disqualification motions for purely strategic purposes.' [Citations.]." (*Gregori v. Bank of America* (1989) 207 Cal.App.3d 291, 300–301 [254 Cal.Rptr. 853], fns. omitted.)

The importance of the policy concerns underlying a disqualification order mandates "careful review of the trial court's exercise of discretion." (*SpeeDee, supra*, 20 Cal.4th at p. 1144.)

B. *Analysis*

■   Generally, before the disqualification of an attorney is proper, the complaining party must have or have had an attorney-client relationship with that attorney. Some courts have found the attorney-client relationship a prerequisite to disqualification: " 'it is confidences acquired in the course of an attorney-client relationship which are protected by preventing the recipient of those confidences from representing an adverse party.' (*Cooke v. Superior Court* [(1978) 83 Cal.App.3d 582] 591 [147 Cal.Rptr. 915].)" (*Maruman Integrated Circuits, Inc. v. Consortium Co.* (1985) 166 Cal.App.3d 443, 448–449 [212 Cal.Rptr. 497]; see also *Strasbourger Pearson Tulcin Wolff Inc. v. Wiz Technology, Inc.* (1999) 69 Cal.App.4th 1399, 1404 [82 Cal.Rptr.2d 326] ["An attorney-client relationship must have existed before disqualification is proper"].)

Other courts, however, have slightly broadened the scope of that general rule. For example, *DCH Health Services, supra*, 95 Cal.App.4th 829, 832, which the trial court relied upon here, holds: "Standing arises from a breach of the duty of confidentiality owed to the complaining party, regardless of whether a lawyer-client relationship existed." (See also *County of Los Angeles v. Superior Court* (1990) 222 Cal.App.3d 647, 658 [271 Cal.Rptr. 698] [granting a motion to disqualify an attorney where the attorney improperly received the complaining party's privileged information from an expert retained by the complaining party as a consultant].)

Leaving aside whether the issue is properly framed as one of standing, an issue largely semantic in this case, we agree with the holding of *DCH Health Services* that some sort of confidential or fiduciary relationship must have existed before a party is entitled to prevail on a motion to disqualify an attorney predicated on the actual or potential disclosure of confidential information.[2] (E.g., Vapnek et al., Cal. Practice Guide: Professional Responsibility (The Rutter Group 2003) ¶ 4:239.1, p. 4-76.4 [to warrant disqualification in the absence of an attorney-client relationship "courts generally require *some sort of fiduciary or quasi-fiduciary relationship* to exist between the attorney and the opposing party or between the attorney and the source of the confidential information"].) Whether a confidential relationship exists is a question of fact. (*Richelle L. v. Roman Catholic Archbishop* (2003) 106 Cal.App.4th 257, 272, fn. 6 [130 Cal.Rptr.2d 601].)

Here, in granting the Pelayos' disqualification motion, the trial court made three express findings of fact: (1) "Court agrees with [the Pelayos], they have standing to bring the motion. See *DCH Health Services*[, *supra*,] 95 Cal.App.4th 829, 832." (2) "Mr. Suman represents parties whose interests are opposing in the same lawsuit." (3) "His duty of loyalty and confidentiality is therefore at risk as to both parties. [Citations.]"

As an initial matter, and again leaving aside the applicability of standing principles, we question based on the trial court's factual findings whether it focused on the relevant relationship—i.e., that between the Pelayos, the moving party, and Suman, the attorney sought to be disqualified—in granting the motion. Rather than finding that Suman owed a duty of confidentiality to the Pelayos, as *DCH Health Services* required, the trial court found that Suman owed, and had put at risk, a duty of confidentiality to his clients, Dino and the Eslavas. (See *DCH Health Services, supra*, 95 Cal.App.4th at pp. 832–833; Vapnek et al., Cal. Practice Guide: Professional Responsibility, *supra*, ¶ 4:239.1, p. 4-76.1.) Arguably, we could infer the trial court also found Suman owed such duty to the Pelayos based on its citation to *DCH*

[2] Both the parties and the trial court, following *DCH Health Services*, frame their analysis in terms of whether the Pelayos had standing to move to disqualify Suman. We prefer, however, to frame our analysis in terms of whether the Pelayos were entitled to prevail on a motion seeking Suman's disqualification. Generally, standing refers to an aggrieved party's right to bring an action in the first instance, rather than an existing party's right to bring a motion seeking some sort of relief from the trial court. (See 5 Witkin Cal. Procedure (4th ed. 1997) Pleading, § 862, p. 320; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2005) ¶ 2:1, p. 2-1; see also *Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 439–440 & fn. 3 [261 Cal.Rptr. 574, 777 P.2d 610] ["a party who has standing to bring an action has standing to seek available provisional relief in that action"]; *Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles* (2006) 136 Cal.App.4th 119, 128 [38 Cal.Rptr.3d 575] ["Standing goes to the existence of a cause of action [citations]"].)

*Health Services.* We need not make that inference, however, because regardless of the trial court's basis for granting the Pelayos' disqualification motion, we conclude that ruling was erroneous.

For their part, the Pelayos concede no attorney-client or other fiduciary relationship existed between them and Suman that would permit them to disqualify him. Without mentioning the trial court's misplaced focus, the Pelayos claim Suman's disqualification was proper based on a duty of confidentiality he purportedly owed them pursuant to Evidence Code section 1119, subdivision (c) and California Rules of Court rule 1620.4, subdivision (c), rules governing the confidentiality of mediation.[3] Specifically, the Pelayos contend: "[The Pelayos] had standing to bring the Motion to Disqualify [Suman] because [they were] entitled to a confidential mediation, in particular confidential caucuses, with [Dino] and a confidential mediation, in particular confidential caucuses, with [the Eslavas]. (California Code of Evidence § 1119; California Rule of Court 1620.4.) However, because [Suman] represented both [Dino] and [the Eslavas], such confidentiality was impossible. Once the parties agreed to mediation, [Pelayos were] actually injured by [Suman's] representation of adverse parties and had standing to object to a potential or actual breach of confidentiality." (Original underscoring.)

The Pelayos identify no authority, and we found none, that permits one party to disqualify the attorney jointly representing the opposing parties based on their agreement to participate in confidential mediation. Moreover, case law from our colleagues suggests otherwise.

In *Barajas v. Oren Realty & Development Co.* (1997) 57 Cal.App.4th 209 [67 Cal.Rptr.2d 62] (*Barajas*), Division Two of the Second Appellate District considered whether a defendant could properly move to disqualify a plaintiff's attorney pursuant to section 1152.5, the predecessor to section 1119, where the attorney represented different plaintiffs against the defendant in the

---

[3] Unless otherwise stated, all statutory citations herein are to the Evidence Code.

Section 1119, subdivision (c) provides: "All communications, negotiations, or settlement discussions by and between participants in the course of a mediation or a mediation consultation shall remain confidential."

California Rules of Court rule 1620.4, subdivision (c) provides: "If, after all the parties have agreed to participate in the mediation process and the mediator has agreed to mediate the case, a mediator speaks separately with one or more participants out of the presence of the other participants, the mediator must first discuss with all participants the mediator's practice regarding confidentiality for separate communications with the participants. Except as required by law, a mediator must not disclose information revealed in confidence during such separate communications unless authorized to do so by the participant or participants who revealed the information."

confidential mediation of a related case.[4] The appellate court answered in the negative, concluding that such a "mediation-disqualification rule" would discourage mediation, contrary to stated legislative intent, because an attorney who mediated one case would thereafter risk disqualification in any other case against the same party. (57 Cal.App.4th at pp. 213–214.) The appellate court noted that common practice allowed attorneys to mediate without subjecting themselves to disqualification. (*Id.* at p. 219.) The appellate court thus further concluded: "If the Legislature had intended an interpretation [of section 1152.5] so in conflict with the goal of encouraging voluntary mediation, but nevertheless deemed it necessary (as the trial court theorized) to promote candor once mediation was chosen, there would likely be some indication of such conflicting intents in the language or history of the statute. Nowhere is there any indication that the Legislature ever contemplated such an interpretation. . . . In view of the practical anti-mediation consequences of such a rule, it is not likely that the Legislature implicitly intended a disqualification rule simply because the Legislature used the words 'shall remain confidential' [in the statute]." (*Id.* at p. 218, fn. omitted.)

The issue in our case differs somewhat from that in *Barajas*. Here, Suman, the attorney facing disqualification, represents two parties in the same litigation. In *Barajas*, the attorney represented one party in the litigation before the court and another in prior related litigation. Nonetheless, much of the reasoning set forth in *Barajas* remains applicable. Were this court to adopt the Pelayos' proposed mediation-disqualification rule, parties jointly represented by a single attorney, and their attorneys, would be discouraged from participating in mediation, a result in conflict with the stated legislative intent of section 1119 to promote voluntary mediation. (See *Barajas, supra*, 57 Cal.App.4th at pp. 217–218.)

Adopting the Pelayos' proposed mediation-disqualification rule would likewise discourage parties from choosing joint representation. Clients would effectively be barred from choosing joint representation if the attorneys they hired to jointly represent them faced disqualification whenever their case proceeded to mediation. We find no reason to do that. Parties whose interests are aligned choose joint representation for a variety of legitimate reasons, such as to save money or other resources, to avoid duplicative work, or to take mutual advantage of an attorney's particular expertise in the relevant subject matter.

■ True, joint representation carries the risk that a conflict of interest will arise between the parties. But where, as in this case, the parties consent to

---

[4] Section 1119, set forth above and enacted in 1997, "continues without substantive change" former section 1152.5(a)(1). (Cal. Law Revision Com. com., 29B West's Ann. Evid. Code (2006 pocket supp.) foll. § 1119, p. 202.)

joint representation after being fully informed of that risk, the court must not interfere with their choice of counsel absent "ethical considerations that affect the fundamental principles of our judicial process." (*SpeeDee, supra,* 20 Cal.4th at p. 1145; see also *Smith, Smith & Kring v. Superior Court* (1997) 60 Cal.App.4th 573, 580–581 [70 Cal.Rptr.2d 507] [recognizing the public interest in allowing clients and attorneys to freely choose their employment arrangements]; *Spindle v. Chubb/Pacific Indemnity Group* (1979) 89 Cal.App.3d 706, 713–714 [152 Cal.Rptr. 776] [concluding joint representation is not improper, despite jointly represented parties' divergence in interest, where the parties make "intelligent, informed decisions regarding the subject matter of their joint representation"]; *Lyle v. Superior Court* (1981) 122 Cal.App.3d 470, 482 [175 Cal.Rptr. 918]; Cal. Rules of Prof. Conduct, rule 3-310, subd. (c) ["A member shall not, *without the informed written consent of each client*: (1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict . . ."] [italics added].) We have identified no ethical consideration that would mandate application of a mediation-disqualification rule whenever parties who knowingly consent to joint representation participate in mediation, particularly where the Legislature expressed no such intent. (See *Barajas, supra,* 57 Cal.App.4th at pp. 217–218.)

■ Finally, were we to adopt the Pelayos' proposed rule, we would in essence recognize a confidential relationship between a mediating party and the attorney jointly representing the opposing parties based solely on the potential exchange of confidential information as part of the mediating process.[5] We have found no legal basis for such relationship.[6] Under California law, a confidential relationship "is not created simply by the receipt of confidential information. (*Barajas*[, *supra*], 57 Cal.App.4th 209.)" (*Richelle L. v. Roman Catholic Archbishop, supra,* 106 Cal.App.4th 257, 272, fn. 6; see also *Cooke v. Superior Court* (1978) 83 Cal.App.3d 582, 590–592 [147 Cal.Rptr. 915] [declining to rule, as a matter of law, that an attorney's exposure to confidential and privileged information requires disqualification of that attorney and his associates]; *Neal v. Health Net, Inc.* (2002) 100

---

[5] We note the Pelayos seek to disqualify Suman based on a *potential or actual* breach of confidentiality. The Pelayos have identified no actual breach of confidentiality that has occurred.

[6] In declining to recognize the existence of a confidential relationship between a mediating party and the attorney jointly representing the opposing parties based on their agreement to mediate, we acknowledge that such a relationship can arise between the individual parties and the mediator. A mediator not only serves as an impartial intermediary between the parties, he or she also serves as the parties' confidant. (*Cho v. Superior Court* (1995) 39 Cal.App.4th 113, 123, 125 [45 Cal.Rptr.2d 863].) In fact, a mediator has a duty to preserve a party's confidences in much the same way as the party's own attorney. (*Ibid.*) For this reason, "disqualification of both [an] individual attorney and his or her firm is required where the attorney has been privy to confidences of a litigant while acting as a neutral mediator" in a related matter. (*Id.* at p. 125.)

Cal.App.4th 831, 844 [123 Cal.Rptr.2d 202].) Instead, its creation generally hinges on " 'an unequal relationship between parties in which one surrenders to the other some degree of control because of the trust and confidence which he reposes in the other.' " (*Richelle L.*, at p. 272, fn. 6.) " 'When a confidential relationship is found to exist, the one in whom confidence was reposed may be held to a higher standard of disclosure and fairness than in an arm's-length relationship. . . .' [Citation.]" (*Ibid.*)

Parties and their attorneys who agree to exchange confidential information during mediation are not in an unequal relationship, nor are they held to a standard of disclosure and fairness higher than in an arm's-length relationship. Rather, they mutually agree to surrender some control to further resolution of the dispute, while continuing to relate to one another at arm's length. As evidence of the mediating parties' continuing autonomy, "[a] mediation participant can . . . restrict disclosures to the other side by a) not making such disclosures itself and b) not authorizing the mediator to make such disclosures." (*Barajas*, *supra*, 57 Cal.App.4th at p. 218.) Indeed, withholding confidential information is a common mediation practice, in part because parties unsuccessful in mediation often return to litigation. (*Ibid.*) As *Barajas* concluded, since "a party can make its own choice regarding disclosure of information [in mediation], and since common practice [has] allowed counsel to mediate without disqualification, it is especially unlikely that the Legislature intended to create so significant a change as a mediation-disqualification rule without expressly so stating." (*Barajas*, at pp. 218–219.)

In summary, the issue before us is simply whether a party may disqualify the attorney jointly representing the opposing parties based solely on their agreement to participate in confidential mediation. We conclude that, despite the potential exchange of confidential information, the degree of confidentiality established among opposing parties and their attorneys in mediation is insufficient to establish such a right.[7]

Thus, we conclude the trial court abused its discretion in granting the Pelayos' motion to disqualify Suman. The Pelayos had no recognizable confidential relationship with Suman that permitted them to disqualify him. (See *DCH Health Services*, *supra*, 95 Cal.App.4th at pp. 832–833; cf. *County of Los Angeles v. Superior Court*, *supra*, 222 Cal.App.3d at pp. 657–658.) Rather, it is Dino and the Eslavas who have a confidential relationship with

---

[7] In so holding, we do not foreclose the possibility that an obligation of confidentiality could, under certain circumstances, arise between an attorney and the opposing party as a result of their participation in mediation. (Cf. *Gilbert v. National Corp. for Housing Partnerships* (1999) 71 Cal.App.4th 1240 [84 Cal.Rptr.2d 204].) We conclude only that, as a general matter, no confidential relationship arises between the attorney and the opposing party based on their mere agreement to participate in mediation.

Suman. Accordingly, to the extent a conflict of interest exists or arises between Dino and the Eslavas—an issue we decline to decide—it is for those parties, not the Pelayos, to disqualify him.[8]

In light of our conclusion that the Pelayos lacked a valid basis for prevailing on their motion to disqualify Suman, we need not address Dino's other arguments for reversing the order.

## DISPOSITION

The disqualification order is reversed. Costs are awarded to Dino.

Pollak, J., and Siggins, J., concurred.

Respondents' petition for review by the Supreme Court was denied February 28, 2007, S149388.

---

[8] Since issuance of the disqualification order, the Eslavas have retained separate counsel.