Filed 4/17/13  Leon v. Pearson Realty CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MARIO LEON, et al., | F064513 |
| Plaintiffs and Appellants, | (Super. Ct. No. 11CECG00809) |
| v. | |
| PEARSON REALTY, INC., et al., | **OPINION** |
| Defendants and Respondents. | |

### THE COURT[*]

APPEAL from an order of the Superior Court of Fresno County.  M. Bruce Smith, Judge.

Miller & Ayala, Nathan S. Miller for Plaintiffs and Appellants.

McCormick, Barstow, Sheppard, Wayte & Carruth, David R. McNamara and Scott M. Reddie, for Defendants and Respondents.

-ooOoo-

Plaintiffs and appellants Mario Leon, Cesar Culqui, MSC Restaurants, Inc., dba Rumba, Robin Kraemer, David Fansler, Yosemite Ranch Investors, LLC, Michelle

---

[*] Before Levy, Acting P.J., Cornell, J. and Gomes, J.

Maxwell and William Maxwell (collectively appellants) appeal from an order denying their motion to disqualify opposing counsel. Appellants contend the trial court erred by not recognizing that disqualification was required because opposing counsel improperly communicated with plaintiff Michelle Maxwell (Maxwell) without her attorney's consent, and in doing so, threatened and intimidated her. We conclude that appellants lacked standing to bring a disqualification motion and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The underlying lawsuit in this case arises from leases appellants entered into for a shopping center. Appellants sued defendants and respondents Pearson Realty, Mike Mele and John Lee (collective respondents) for alleged misrepresentations as to the shopping center including the presence of a specialty supermarket within the center that eventually became a Dollar Store. Appellants are represented by Nathan Miller, while respondents are represented by David R. McNamara (McNamara) and his law firm, McCormick, Barstow, Sheppard, Wayte & Carruth, LLP (the law firm).

In January 2012, appellants filed a motion to disqualify McNamara and the law firm from representing respondents. Appellants asserted disqualification was required because McNamara improperly communicated with an adverse party, Maxwell, knowing she was represented by counsel, in violation of Rule 2-100 of the Rules of Professional Conduct, and also violated Rule 5-310 of the Rules of Professional Conduct by threatening and intimidating Maxwell.

Maxwell asserted in her accompanying declaration that while attending a football game in San Francisco on September 3, 2011, McNamara, who was obviously intoxicated, walked up to her at a tailgate party, put his arm around her and said "I hope we can still be friends after you lose your case." Maxwell, who did not "really know who he was," asked what he was talking about. McNamara responded that he was representing Pearson Realty and he "was going to come down really hard" on her when he deposed her. McNamara also said he hoped she was not expecting to win with her

2.

retained counsel, Miller, because Miller had already lost a case to him; he also hoped she was not paying Miller a lot of money because he was not worth it. McNamara hoped that after the deposition and case were done, they could still be friends and laugh about it over a beer because she was going to lose. McNamara also said he was going to be very hard on the other plaintiffs and there was no way they would win because it was a slam dunk case; he could not believe "he is wasting his time and money with this case." Maxwell claimed she was "very shaken and intimidated" by McNamara's comments.

In Miller's accompanying declaration, he stated that on September 15, 2011, after learning of McNamara's comments, he e-mailed McNamara and asked him to voluntarily withdraw from the case. McNamara refused to do so. Miller further stated that he believed McNamara's continued presence in the action was unfair to his client, and he would be forced to file motions for protective orders whenever McNamara or someone else from the law firm deposes his client or examines her at trial. He also believed the conflict would make it nearly impossible for his client to receive a fair trial, as there was no way to shield her from respondents' counsel and she should not be forced to be subjected to "that type of environment."

In opposition, respondents admitted that McNamara had a brief conversation with Maxwell at the football game. McNamara stated in his declaration that he had met Maxwell before, in July 2011, while on vacation with mutual friends. He claimed that when he saw Maxwell at the football game, he went up to her and told her he was representing Pearson Realty, and they then "joked and laughed about the situation," including taking her deposition. He admitted telling Maxwell that he had tried a similar case against Miller, he was confident this case would end in the same way, and he hoped Miller took the case on a contingency. McNamara asserted his comments were meant only in jest, and it appeared to him and his wife that Maxwell took the comments in a joking manner. He did not intend to try to intimidate, offend or embarrass Maxwell. McNamara further stated that at no time during any conversation he had with Maxwell

3.

did they discuss any confidential information about the case, and Maxwell did not share any information about the case.

Based on McNamara's declaration, respondents argued that McNamara's communication with Maxwell would not have a substantial continuing effect on the litigation and would not prejudice appellants' case, as she did not reveal any confidential information.

In reply, appellants submitted Maxwell's supplemental declaration, in which she stated that although she knew who McNamara was when he approached her at the football game, she did not have any idea what type of attorney he was or the types of cases he handled. She was "surprised and offended" that McNamara would claim he made the statements in jest and allude to the idea that she took him the wrong way. She asserted that McNamara was obviously intoxicated, told her he was going to tear her apart and probably make her cry, and they were going to lose. She took his comments as threats that were "extremely intimidating" to her.

The trial court issued a tentative ruling, which became the ruling of the court after appellants withdrew their request for oral argument. In its ruling, the trial court found that while McNamara "may have exercised poor judgment" in his conversation with Maxwell, the "transgression" did not require disqualification. The trial court explained that a court may disqualify an attorney based on a violation of Rule 2-100(A) of the Rules of Professional Conduct only if the violation would have a continuing effect on the proceedings. The trial court found that there was no evidence or contention McNamara improperly obtained information about the case through the conversation and it did not appear that the communication would have a continuing effect on the proceedings; moreover, McNamara's conduct was not so severe that protective orders would be warranted to shield Maxwell from him.

## DISCUSSION

This appeal presents the issue of whether a party who has no attorney-client, fiduciary or other confidential relationship with an attorney can nevertheless prevail on a motion to disqualify that attorney. For the reasons set forth below, the answer is "No."

"A trial court's authority to disqualify an attorney derives from the power inherent in every court, '[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto.'" (*In re Complex Asbestos Litigation* (1991) 232 Cal.App.3d 572, 585; Code Civ. Proc., § 128, subd. (a)(5).) An order denying a motion to disqualify opposing counsel is appealable "either as a denial of injunctive relief or as a collateral matter unrelated to the merits of the underlying litigation." (*Gregori v. Bank of America* (1989) 207 Cal.App.3d 291, 300; *Meehan v. Hopps* (1955) 45 Cal.2d 213, 216-217.) "Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion." (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143.) But the outcome of this appeal depends on whether appellants had standing to bring the motion to disqualify. Because standing is a question of law, we exercise de novo review. (See *IBM Personal Pension Plan v. City and County of San Francisco* (2005) 131 Cal.App.4th 1291, 1299.)

"Standing generally requires that the plaintiff be able to allege injury, that is, an invasion of a legally protected interest." (*Great Lakes Construction, Inc. v. Burman* (2010) 186 Cal.App.4th 1347, 1356 (*Great Lakes*).) "A 'standing' requirement is implicit in disqualification motions. Generally, before the disqualification of an attorney is proper, the complaining party must have or must have had an attorney-client relationship with that attorney." (*Ibid.*) In the absence of an attorney-client relationship, "the moving party must have an expectation of confidentiality." (*Ibid.*) When the moving party has such an expectation, standing arises from a breach of the duty of confidentiality owed to the moving party. (*Ibid.*) Thus, in *Great Lakes*, the appellate

5.

court held that a party to whom opposing counsel owed no duty of loyalty lacked standing to bring a motion to disqualify counsel for simultaneously representing clients with conflicting interests. (*Id.* at pp. 1358-1359; see also *Dino v. Pelayo* (2006) 145 Cal.App.4th 347, 357 [moving party with "no recognizable confidential relationship" with opposing counsel lacked standing to bring disqualification motion based on alleged breach of duty of confidentiality]; *DCH Health Services Corp. v. Waite* (2002) 95 Cal.App.4th 829, 832 ["only a party with an expectation of confidentiality can disqualify a lawyer," italics and initial capitalization omitted].) Lack of standing may be raised at any time in the proceeding, including for the first time on appeal. (*Blumhorst v. Jewish Family Services of Los Angeles* (2005) 126 Cal.App.4th 993, 1000.)

Here, Maxwell had no relevant relationship with McNamara; the two never had an attorney-client or confidential relationship, and appellants did not show that Maxwell had any expectation of confidentiality. Moreover, there is no evidence that any confidential information changed hands, that McNamara had a substantive discussion about this case with Maxwell, or that he acquired any confidential information during the conversation that could be used to respondents' advantage.

Appellants nevertheless assert they were injured when McNamara communicated with Maxwell in a threatening and intimidating manner about the subject of the litigation, knowing she was a represented party, in violation of rules 2-100 and 5-310 of the Rules of Professional Conduct.[1] Citing *Kennedy v. Eldridge* (2011) 201 Cal.App.4th 1197,

---

[1] Rule 2-100(A) of the Rule of Professional Conduct provides: "While representing a client, a member shall not communicate directly or indirectly about the subject of the representation with a party the member knows to be represented by another lawyer in the matter, unless the member has the consent of the other lawyer."

Rule 5-310 provides that a member shall not: "(A) Advise or directly or indirectly cause a person to secrete himself or herself or to leave the jurisdiction of a tribunal for the purpose of making that person unavailable as a witness therein. [¶] (B) Directly or indirectly pay, offer to pay, or acquiesce in the payment of compensation to a witness contingent upon the content of the witness's testimony or the outcome of the case. [¶]

6.

1204-1205 (*Kennedy*), they contend they have standing because McNamara's breach of professional rules was "manifest and glaring" and "has infected the litigation."

In *Kennedy*, the appellate court held that a non-client with no prior attorney-client relationship had standing to move to disqualify an opposing attorney because the opposing attorney likely acquired confidential facts that could be used to his advantage. (*Kennedy*, *supra*, 201 Cal.App.4th at pp. 1205, 1207-1208.) In so holding, the court explained that one does not necessarily need to be a present or former client of an attorney to bring a disqualification motion; instead, a non-client might meet the standing requirements "'based upon a third party conflict of interest or other ethical violation[,]'" where "'the ethical breach is "'manifest and glaring'"" and so "infects the litigation in which disqualification is sought that it impacts the moving party's interest in a just and lawful determination of [his or] her claim"'." (*Id.* at p. 1204, citing *Great Lakes*, *supra*, 186 Cal.App.4th at p. 1357.) Noting that the court has "'an independent interest in ensuring trials are conducted within ethical standards of the profession and that legal proceedings appear fair to all who observe them[,]'" the appellate court concluded that "where an attorney's continued representation threatens an opposing litigant with cognizable injury or would undermine the integrity of the judicial process, the trial court may grant a motion for disqualification, regardless of whether a motion is brought by a present or former client of recused counsel." (*Kennedy*, *supra*, 201 Cal.App.4th at p. 1205, italics omitted.)

Appellants' reliance on *Kennedy* is misplaced, as here there is no evidence that McNamara obtained confidential information during the conversation; neither is there evidence that his continued representation of respondents will threaten Maxwell, or any

---

Except where prohibited by law, a member may advance, guarantee, or acquiesce in the payment of : [¶] (1) Expenses reasonably incurred by a witness in attending or testifying. [¶] (2) Reasonable compensation to a witness for loss of time in attending or testifying. [¶] (3) A reasonable fee for the professional services of an expert witness."

of the other appellants, with cognizable injury or undermine the integrity of the judicial process. As respondents point out, appellants have not cited a single case where a court has disqualified counsel based on a conversation between that counsel and an opposing represented party where there was no prior attorney-client relationship and no exchange of confidential information or information that was relevant to the merits of the case. Absent an exchange of confidential information, there is no legal basis to disqualify McNamara and the law firm. (See, e.g., *Cooke v. Superior Court* (1978) 83 Cal.App.3d 582, 591-592 [disqualification is to protect a relationship of confidence and entrustment; appellate court knew of no case "where disqualification was imposed purely as a punitive or disciplinary measure, and where there was no prior representation or confidential professional relationship between the complaining party and the attorney or law firm sought to be disqualified"].)

In sum, appellants have failed to show they have suffered a legally cognizable injury for which they may disqualify McNamara and the law firm, and therefore they do not have standing to bring the motion.

## DISPOSITION

The order denying the motion to disqualify is affirmed. Respondents shall recover their costs on appeal.

8.