Filed 3/19/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JAMES ALVIN JARVIS, Individually and as Trustee, etc.,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>TODD HENRY JARVIS et al.,<br><br>      Defendants and Appellants. | H044930<br>(Monterey County<br> Super. Ct. No. 16CV002928) |

Appellant Jarvis Properties is a limited partnership that owns a two-acre parcel of land. Its two general partners—appellant Todd Henry Jarvis and respondent James Alvin Jarvis (brothers)—each own a 50 percent interest in the partnership, which is less than the majority consent required to act on behalf of the partnership (Corp. Code, § 15904.06, subd. (a)). The general partners cannot agree on what to do about the two-acre parcel and their partnership agreement does not address the question of what occurs in the event of a decision-making deadlock. They have, therefore, turned to the courts.

James Jarvis filed an action for partition by sale, naming Todd Jarvis and Jarvis Properties as defendants.[1] Todd hired a lawyer to represent him in the partition action; he also hired a separate lawyer, William Roscoe, III, to represent the partnership. Both Todd and the partnership filed demurrers. James objected to having Roscoe represent the partnership and filed a motion to disqualify Roscoe on the ground that Roscoe was not authorized to act by the requisite majority of the general partners. James was concerned that Roscoe—who took the position that he was not subject to the direction of either

---

[1] For ease of reference, we will refer to the brothers by their first names.

partner and was being paid by Todd—was not acting in the best interests of the partnership and would run up unnecessary litigation costs and deplete the partnership's limited assets, to the detriment of the partnership. The trial court granted the motion to disqualify Roscoe, dismissed the partnership's demurrer, and overruled Todd's demurrer. Both Todd and the partnership appeal the order disqualifying Roscoe and dismissing the partnership's demurrer.[2]

We conclude the trial court did not err as a matter of law when it granted the motion to disqualify Roscoe in the circumstances of this case. Finding no abuse of discretion, we will affirm the order disqualifying Roscoe.

## I.  FACTS AND PROCEDURAL HISTORY

### A.  *Description of Property at Issue and Litigation Involving the Property*

The parties and the property at issue are well known to this court. After their father's death in 1996, Todd and James were the beneficiaries of certain family trusts. Litigation ensued in Monterey County, and the brothers entered into an agreement in 1998 as part of a court-supervised settlement of their dispute concerning the family trusts. In 2004, Todd and James amended the trust and named John McDonnell (a trust attorney) as the court-appointed trustee. The trust's primary assets consisted of real property in Salinas: the Jarvis Ranch (333.5 acres of farmland on the west side of Highway 101) and two parcels that are adjacent to one another (three acres in a residential area on the east side of Highway 101). One of the two smaller parcels is the subject of this appeal. The trust allowed either beneficiary to object to certain proposed actions by the trustee, followed by court authorization. Todd filed several such proceedings in Monterey County Superior Court. Between 2010 and 2018, the trust litigation resulted in the filing

---

[2] Todd has not appealed the order overruling his demurrer. "An order overruling a demurrer is not directly appealable, but may be reviewed on appeal from the final judgment. [Citation.]" (*Casterson v. Superior Court* (2002) 101 Cal.App.4th 177, 182.)

2

of three appeals and four writ petitions in this court.[3]  The trust litigation was resolved by confidential settlement in late 2018.

This appeal arises out one of two partition actions that were filed in 2016 involving the two parcels on the east side of Highway 101.  The first parcel, which is "just over [one] acre" in size, is located at 2357 North Main Street in Salinas in an area that is predominantly residential.  According to James, this parcel "has an irregular shape which hampers its development prospects unless coupled with" the adjacent parcel.  The first parcel is currently improved with three older houses, a garage, and a water tower, all of which "suffer from a great deal of deferred maintenance."  The parties refer to this parcel as the "Improved Property," and we adopt that designation.  Todd and James (individually and as trustee of two trusts) own the Improved Property as tenants in common.

The second parcel is located immediately adjacent to the Improved Property on North Main Street.  The parties refer to this parcel as the "Adjacent Property," and we shall do the same.  The Adjacent Property is two acres in size; it is vacant land and allegedly provides no income.  James alleges it is "more rectangular in shape which helps to make the two properties as a whole far more developable."  For ease of reference, we shall refer to the Improved Property and the Adjacent Property combined as the "Two Parcels."

---

[3] The three appeals arising out of the trust litigation (Monterey County Superior Court case No. P31598) are *McDonnell v. Jarvis* (Feb. 24, 2012, H035553) [nonpub. opn.]; *McDonnell v. Jarvis* (Oct. 23, 2013, H036490) [nonpub. opn.]; and *McDonnell v. Jarvis* (June 30, 2014, H037704) [nonpub. opn.].  On our own motion, we take judicial notice of this court's opinions in the prior appeals.  (Evid. Code, § 452, subd. (d)(1).)  Our summary of the factual and procedural background includes some information that we have taken from those opinions.  The writ petitions arising out of the trust litigation are case numbers H037406, H043655, H043728, and H045993.  Todd was the petitioner in each case, and in each case, the petition was denied.

The Two Parcels were once owned by James and Todd's parents, James A.P. Jarvis (Father) and Marjorie Todd Jarvis (Mother). In December 1986, Father, Mother, and James formed a limited partnership known as Jarvis Properties (hereafter sometimes "the Partnership"). Father was the general partner and Father, Mother, and James were the limited partners. The purpose of the limited partnership was to "engage in the investment in real property" and its primary asset was the Adjacent Property. Ownership of the Partnership changed over time. At all times relevant to this dispute, Todd and James each owned 50 percent of the general and limited partnership interests in Jarvis Properties.[4] The Partnership owns the Adjacent Property. During much of the trust litigation, the Two Parcels were "wholly controlled" by the trustee, McDonnell. In September 2015, the trustee relinquished control of the Two Parcels to Todd and James.

Todd and James were also parties to three consolidated eminent domain actions in Monterey County Superior Court (case Nos. M98919, M98920, and M98921), which were filed by the California Department of Transportation to acquire portions of the Jarvis Ranch and the Two Parcels for improvements along Highway 101. During the pendency of those actions, the Jarvis Ranch was sold to a third party, who settled the eminent domain action as to Jarvis Ranch. The eminent domain actions as to the Two Parcels went to trial in April 2016. Todd has appealed the judgment rendered in that trial in case No. H043737, which is pending before this court. Thus, the Two Parcels have been the subject of the trust litigation, the eminent domain actions, and the partition actions.

---

[4] James holds his 50 percent interest in the Partnership in his individual capacity and as trustee of three trusts: (1) the 1987 James A.P. Jarvis Revocable Trust for the benefit of the Issue of James Alvin Jarvis; (2) the 1987 Marjorie Todd Jarvis Revocable Trust for the benefit of the Issue of James Alvin Jarvis; and (3) the 1986 Jarvis Irrevocable Trust. James, individually and as trustee of the three trusts, is the plaintiff in this partition action.

4

## B. Partition Actions

### 1. Complaints in First and Second Partition Actions

In May 2016, James filed a complaint in *Jarvis v. Jarvis* (Monterey County Superior Court case No. 12CV001295, hereafter "Case No. 1295") seeking partition of both the Improved Property and the Adjacent Property.[5] The complaint contained causes of action for partition by sale, an accounting, and appointment of a receiver. James alleged that since McDonnell relinquished control of the Two Parcels in September 2015, the brothers "have not been able to agree on how to care for or dispose of" the properties. James suggested hiring a professional property manager, which Todd rejected. James alleged Todd (1) took control of the Two Parcels and collected rent on the Improved Property; (2) has not provided an accounting or information regarding the payment of rents or the condition of the properties; and (3) has not consulted with James about the Two Parcels, even though James is a co-owner of the Improved Property and the Partnership. The complaint alleged that the jury awarded the Partnership $163,162 in the eminent domain action and that James is concerned that Todd will "usurp those funds for his own uses." Aside from the proceeds of the eminent domain action and owning the Adjacent Property, the Partnership "has no other business function, and does not owe any creditors any money."

Todd filed a demurrer and a motion to strike the complaint in Case No. 1295. In September 2016, the trial court sustained the demurrer with leave to amend and granted the motion to strike, stating that James "may not seek partition of two parcels under different ownership under a single cause of action for partition and sale." While Todd's motions were pending, James filed a motion for appointment of a receiver over the Improved Property, which the court granted.

---

[5] Todd's requests for judicial notice of the complaint filed in Case No. 1295 and the trial court's September 13, 2016 order sustaining the demurrer and granting the motion to strike in that case are granted. (Evid. Code, §§ 459, subd. (a); 452, subd. (d).)

In September 2016, James filed a new complaint in the instant action entitled *Jarvis v. Jarvis*, Monterey County Superior Court case No. 16CV002928 (hereafter sometimes "Case No. 2928"), which contains a single cause of action for partition by sale of the Adjacent Property. It alleges that "there is no possibility that [James and Todd] would cooperate to develop" the Two Parcels, that the brothers are "unable and unwilling to collectively manage or develop the Adjacent Property," that its highest and best use is to be sold, and that its value can be maximized in a coordinated partition sale with the Improved Property. The named defendants are Todd and Jarvis Properties.

James, as general partner, signed a notice and acknowledgement of receipt in March 2017, accepting service of the new complaint on behalf of the Partnership. In a case a management conference statement, James told the court he planned to file a motion to consolidate the two partition actions. He also stated that Todd had selected attorney William P. Roscoe, III to represent the Partnership and complained of Todd's "unilateral appointment" of Roscoe.

### 2. *James's Motion to Disqualify Roscoe*

Shortly after James filed his case management conference statement, Roscoe filed a demurrer on behalf of the Partnership. While the demurrer was pending, James filed a motion to disqualify Roscoe from representing the Partnership and to dismiss the demurrer because Roscoe lacked authority from a majority of the general partners to represent the Partnership. James argued that "[p]ursuant to his standard practice, Todd . . . has elected to seek to render this litigation as needlessly complex and wasteful as possible." He stated that Todd selected Roscoe to represent the Partnership over his express objection and that Roscoe had "taken the position that his representation of the partnership is to be directed solely by one general partner [Todd], and in direct contravention of the direction of the other equal general partner [James]." Citing

6

Corporations Code section 15904.06, subdivision (a)[6], James argued that since there is more than one general partner, Roscoe needed the authority of a majority of the general partners to act and since Roscoe was only authorized by one general partner, he was not authorized to act on behalf of the Partnership or to file a demurrer. James argued that Todd planned to demur on the same grounds; that Todd could articulate his arguments regarding partition directly without the need for Roscoe to represent the Partnership; that although the Partnership is a separate entity, it has no position independent of the general partners.

James suggested options for handling the deadlock between the partners if Jarvis Properties must participate in the action, which he broke down into two categories: (1) allowing the partners to litigate the partition action without participation by the Partnership, or (2) "appointing a tie-breaking actor . . . to act on behalf of the Partnership." As for the first category, James suggested the parties could stipulate to an appearance by the Partnership in which it submits to the court's jurisdiction and agrees to be bound by the outcome of the litigation conducted by the brothers. James contended it was not necessary for the court to "make this determination at this time, and it may simply order Roscoe disqualified." He also argued that because Roscoe did not have the requisite authority to act on behalf of the Partnership, the demurrer was moot. He argued that if Todd has the power to unilaterally order the filing of a demurrer, then James has the authority to unilaterally order it withdrawn. Shortly after James filed the motion to disqualify Roscoe, Todd filed his demurrer to the complaint.

### 3. *James's Opposition to the Demurrers*

James filed opposition to both demurrers, which stated: "[N]ot only has [Todd] filed his own meritless demurrer—he has unilaterally (and in direct violation of the legal requirement that only a majority of general partners may direct partnership activities such

_____

[6] All undesignated statutory references are to the Corporations Code.

as litigation) directed Roscoe to file another overlapping demurrer." James argued the demurrers were "without merit, and their duplicative procedural posture makes clear the true intent is merely the squandering of resources." James argued that the Partnership's demurrer was not properly before the court because Roscoe was not authorized to act on behalf of the Partnership. He argued that Code of Civil Procedure section 872.730 expressly permits "an action for partition of partnership property" and that both the statute and the partnership agreement permit partition of partnership property outside of an action to dissolve the Partnership.

### 4. *The Partnership's Opposition to the Motion to Disqualify Roscoe*

In opposition to the disqualification motion, Roscoe filed a declaration stating that (1) he was retained to represent only Jarvis Properties; (2) he did not represent Todd, who had his own attorney; (3) Todd had signed Roscoe's retainer agreement as a general partner of the Partnership; and (4) the retainer agreement provides that Roscoe represents Jarvis Properties only and will not represent any of its partners.

The Partnership's opposition began by repeating many of the arguments in the demurrers and discussing whether James had the authority under partnership law and the partition statutes to bring a partition action. The opposition argued that the partition action was not authorized by law and that the disqualification motion was an attempt to remove opposition to the partition action to facilitate an unauthorized sale of the property. The Partnership argued that "having sued the Partnership [James] may not, due to obvious *conflicts of interest*, participate in the defense in any way. *While neither partner should participate [in] or direct the Partnership defense*, there is *no conflict* if one partner sues the Partnership and one partner merely arranges for independent representation of the Partnership as Todd . . . has done." (Italics added.) In response to James's suggestion that the Partnership did not need separate representation because Todd and James would adequately litigate all issues, the Partnership argued that neither

8

Todd nor James "have any property interest whatever" in the Adjacent Property and therefore lacked standing to bring or defend the partition action. It also argued that since James did not have standing to bring the partition action, he lacked standing to move to disqualify Roscoe. The Partnership argued that it was sued by James and had every right to appear as a named party represented by counsel. It contended that by seeking to disqualify Roscoe, James sought to prevent "any representation or defense of the Partnership at all," and that the tie-breaking options proposed by James "are far outside the scope of this motion." The Partnership asserted that if the motion to disqualify was successful, James would be able to sell the property "in the absence of opposition of the owner thereof, which is the Partnership."

### 5. *James's Reply in Support of the Disqualification Motion*

In reply, James asserted that since Roscoe had argued that "neither partner should participate [in] or direct the Partnership defense," Roscoe's view was that "the goals, strategy, tactics, and <u>costs</u> of this litigation should be left entirely to [Roscoe], with no direction from any general or limited partner, or from any officer of the Partnership." James argued this was a violation of the Rules of Professional Conduct, former rule 3-600, which required an attorney "representing an organization" to "conform his or her representation to the concept that the client is the organization itself, acting through its highest authorized officer, employee, body, or constituent overseeing the particular engagement." James argued it was not for Roscoe to decide what is in the best interest of the Partnership, and that "is for a <u>majority</u> of the general partners to decide." James asserted that Todd retained Roscoe to represent the interests Todd wishes to pursue; that since the Partnership has no liquid assets, Roscoe was "presumably" being paid by Todd; and that to "the extent [Roscoe] expects to recoup his fees . . . from Partnership assets," he was doing a disservice to the Partnership, the very entity he represents. James argued that Roscoe would "run up" costs without direction from someone on behalf of the

9

Partnership or a court-ordered appointment, and that Roscoe was not acting in the best interest of the Partnership. James argued that Todd had demurred on the same grounds as the Partnership, and was sufficiently interested to "reasonably assure that all relevant facts and issues will be adequately presented."

### 6. *Hearing and Orders on Motion to Disqualify and Demurrers*

The motion to disqualify and the demurrers, were heard at the same time. The court's tentative ruling on the motion to disqualify was to grant the motion because "there is not a majority of partners in this two-partner business that agree on hiring an attorney for the partnership." The court noted that the partners were deadlocked and stated, "if these two parties never agree, there is never going to be any action taken on this property . . . because of the history of this relationship." The court granted the motion to disqualify Roscoe and dismissed the Partnership's demurrer without prejudice. The court denied Todd's request for judicial notice and overruled Todd's demurrer to the complaint. Both Todd and the Partnership (sometimes jointly "Defendants") appeal the order on the disqualification motion.

## II. DISCUSSION

### A. *The Partnership Has Waived Any Defects in Service and is Not in Default*

We proceed by addressing two points raised by the opening brief. Todd and the Partnership complain repeatedly in their joint opening brief that James acted inappropriately by serving himself and then accepting service of the complaint on behalf of the Partnership. They also suggest that the trial court's order disqualifying Roscoe and dismissing the demurrer forces the Partnership to default. As we shall explain, neither point has any merit.

The Partnership did not file a motion to quash service of summons or otherwise challenge service of the complaint in the trial court. Jarvis Properties' demurrer was a first appearance by the Partnership, which waived any defects in service. (Code Civ.

10

Proc., §§ 1014 [defendant appears in an action by filing a demur] and 410.50, subd. (a) ["A general appearance by a party is equivalent to personal service of summons on such party"]; *Fireman's Fund Ins. Co. v. Sparks Construction, Inc*. (2004) 114 Cal.App.4th 1135, 1145 [a general appearance operates as a consent to service, curing any defects in service].) Since the Partnership waived any defects in service by filing a demurrer, Defendants cannot complain that service was improper on appeal.

Defendants contend the trial court's order disqualifying Roscoe, "creates an absurd result where a fifty percent (50%) partner can sue his partnership and then force the partnership to default by vetoing its ability to hire [an attorney]." By filing a demurrer, the Partnership prevented the court from entering its default. (Code Civ. Proc., § 585, subds. (a), (b) [authorizing clerk, upon application, to enter the defendant's default if "no answer, demurrer, [or other enumerated response] has been filed."]) The court in *Barragan v. Banco BCH* (1986) 188 Cal.App.3d 283, 298 (*Barragan*), held that if a demurrer has been filed, but goes off calendar and is no longer operative and hence moot, the clerk may enter the defendant's default. One treatise questions the result in *Barragan* and notes that no other appellate court has endorsed its " 'moribund demurrer' analysis." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (Rutter Group 2018) ¶¶ 5:38 to 5:40, P. 5-12.) In this case, the trial court, upon disqualifying Roscoe, dismissed the demurrer. It did not find that the Partnership was in default. Under the plain language of section 585, subdivisions (a) and (b), what prevents entry of default is the *filing* of the demurrer. Since the Partnership *filed* a demurrer, it is not in default, and the filing of the demurrer prevents its default from being taken.

## B. *Standard of Review*

"An order on a motion to disqualify counsel is directly appealable." (*Lynn v. George* (2017) 15 Cal.App.5th 630, 633, fn. 1, citing *Derivi Construction & Architecture, Inc. v. Wong* (2004) 118 Cal.App.4th 1268, 1272.) " 'A trial court's authority to

11

disqualify an attorney derives from the power inherent in every court "[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto." [Citations.]' (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1145 . . . (*SpeeDee Oil*).) 'Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion. [Citations.]' " (*In re Charlisse C.* (2008) 45 Cal.4th 145, 159 (*Charlisse C.*).)

"The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712.) "As to disputed factual issues, a reviewing court's role is simply to determine whether substantial evidence supports the trial court's findings of fact; 'the reviewing court should not substitute its judgment for . . . express or implied [factual] findings [that are] supported by substantial evidence. [Citations.]' [Citation.] As to the trial court's conclusions of law, however, review is de novo; a disposition that rests on an error of law constitutes an abuse of discretion. [Citations.]" (*Charlisse C.*, *supra*, 45 Cal.4th at p. 159 [trial court that applied the wrong legal standard in ordering counsel's disqualification abused its discretion].) "The importance of the policy concerns underlying a disqualification order mandates 'careful review of the trial court's exercise of discretion.' [Citation.]" (*Dino v. Pelayo* (2006) 145 Cal.App.4th 347, 351-352 (*Dino*), citing *SpeeDee Oil*, *supra*, 20 Cal.4th at p. 1144.)

The parties acknowledge these authorities, but dispute whether there were disputed factual issues here. Defendants argue that there are no disputed questions of fact and that the parties disagree on what the law allows and that the issue is purely a legal question, which this court should review de novo. James contends the de novo standard

is not the appropriate standard of review because there are disputed questions of fact regarding "who will direct Roscoe's unauthorized representation of the Partnership." Although presented as a factual dispute, this is really a legal question of who has the right to direct the Partnership's defense in the circumstances presented here. We shall review the question whether the court erred as a matter of law when it disqualified Roscoe de novo and the court's application of the legal rules to the facts for abuse of discretion.

### C. *General Principles Regarding Disqualification of Counsel*

James's motion to disqualify Roscoe derives from the contention that Roscoe was without authority to act for the Partnership. Although this argument is not typical of the bases on which attorneys are removed by the trial court, we find the principles underlying disqualification useful in our analysis here. As we have noted, a "trial court's authority to disqualify an attorney derives from the power inherent in every court '[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto.' [Citations.]" (*SpeeDee Oil*, *supra*, 20 Cal.4th at p. 1145, quoting Code Civ. Proc., § 128, subd. (a)(5).) "The power is frequently exercised on a showing that disqualification is required under professional standards governing avoidance of conflicts of interest or potential adverse use of confidential information. [Citations.] Violation of a disciplinary rule may justify disqualification. ([Citation.]; cf. *Gregori v. Bank of America* (1989) 207 Cal.App.3d 291, 303 . . . [(*Gregori*)] [suggesting disqualification is not *necessarily* warranted for violation of a specific disciplinary rule].)" (*Responsible Citizens v. Superior Court* (1993) 16 Cal.App.4th 1717, 1723-1724 (*Responsible Citizens*).)

In general, "[c]onflicts of interest commonly arise in one of two factual contexts: (1) in cases of successive representation, where an attorney seeks to represent a client with interests that are potentially adverse to a former client of the attorney; and (2) in

13

cases of simultaneous representation, where an attorney seeks to represent in a single action multiple parties with potentially adverse interests. The primary fiduciary value at stake in each of these contexts differs, and the applicable disqualification standards vary accordingly. In successive representation cases, 'the chief fiduciary value jeopardized is that of client confidentiality.' (*Flatt v. Superior Court* (1994) 9 Cal.4th 275, 283 . . . (*Flatt*).) Therefore, the disqualification standards [our Supreme Court has] developed for such cases focus on the former client's interest 'in ensuring the permanent confidentiality of matters disclosed to the attorney in the course of the prior representation.' (*Ibid.*) In simultaneous representation cases, '[t]he primary value at stake . . . is the attorney's duty—and the client's legitimate expectation—of loyalty, rather than confidentiality.' (*Id*. at p. 284.) Because a conflict involving an attorney's duty of loyalty is 'most egregious' kind of conflict, the disqualification standards [the Supreme Court has] developed for simultaneous representation cases are 'more stringent' than those that apply in successive representation cases; '[w]ith few exceptions, disqualification [in a case of simultaneous representation] follows automatically, regardless of whether the simultaneous representations have anything in common or present any risk that confidences obtained in one matter would be used in the other. [Citation.]' (*SpeeDee Oil*, *supra*, 20 Cal.4th at p. 1147.)" (*Charlisse C*., *supra*, 45 Cal.4th at pp. 159-160.)

"The attorney's obligation to maintain client confidences—the duty central to successive representation conflicts—is confirmed by California statute. Business and Professions Code section 6068, subdivision (e) provides: 'It is the duty of an attorney to do all of the following: [¶] … [¶] (e)(1) To maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client.' This obligation survives the termination of the attorney-client relationship (*SpeeDee Oil, supra*, 20 Cal.4th at pp. 1144-1145). The attorney's duty of loyalty to his or her client— the duty central to concurrent representation conflicts—is specified in the California State

14

Bar Rules of Professional Conduct. (Rules Prof. Conduct, [former] rule 3-310(C) & (E); [citation].)" (*M'Guinness v. Johnson* (2015) 243 Cal.App.4th 602, 614-615.)

### D. Standing

Todd and the Partnership argue that James does not have standing to seek Roscoe's disqualification because James has never had an attorney-client relationship with Roscoe. They assert that Roscoe represents only the Partnership, and they rely on the rule from *Responsible Citizens* that " 'representation of a partnership does not, by itself, create an attorney-client relationship with the individual partners.' " (*Responsible Citizens*, *supra*, 16 Cal.App.4th at p. 1731.) Indeed, no one contends that Roscoe directly represents or has ever represented either of the partners. James argues that Defendants mistakenly rely on standing rules for disqualification based on conflicts of interest and that those rules do not apply here since he sought Roscoe's disqualification based on a lack of authority to act on behalf of the Partnership, not a conflict of interest. James argues that he "has an inherent right to seek Roscoe's disqualification because Roscoe's purported representation of the Partnership was not authorized by the general partners" and that he (James) arguably "had a duty as a general partner to move to disqualify Roscoe."

We review the question whether a party has standing to bring a disqualification motion de novo. (*Blue Water Sunset, LLC v. Markowitz* (2011) 192 Cal.App.4th 477, 485 (*Blue Water*).)

"Standing generally requires that the plaintiff be able to allege injury, that is, an invasion of a legally protected interest." (*Great Lakes Construction, Inc. v. Burman* (2010) 186 Cal.App.4th 1347, 1356.) Cases have held that "[a] 'standing' requirement is implicit in disqualification motions" (*ibid.*) or that a "complaining party who files a motion to disqualify is required to have standing" (*Blue Water*, *supra*, 192 Cal.App.4th at p. 485). To demonstrate standing to disqualify counsel, "[s]ome cases hold that the complaining party must prove a present or past attorney-client relationship with the

15

attorney who is the target of the motion.  ([*Dino*, *supra*, 145 Cal.App.4th 347, 352 . . .];
*Earl Scheib, Inc. v. Superior Court* (1967) 253 Cal.App.2d 703, 707 . . . [a generally
recognized exception to disqualification is where the relationship of attorney and client
was never in fact created between the attorney and the complaining party]; *Cornish v.
Superior Court* (1989) 209 Cal.App.3d 467, 478 . . . [' "Before an attorney may be
disqualified from representing a party in litigation because his representation of that party
is adverse to the interest of a current or former client, it must first be established that the
party seeking the attorney's disqualification was or is 'represented' by the attorney in a
manner giving rise to an attorney-client relationship." '].)"  (*Blue Water*, at p. 485.)
"Other courts permit disqualification on a different basis, holding that standing is
established so long as the lawyer owed a duty of confidentiality to the complaining party
and breached it.  (*DCH Health Services Corp. v. Waite* (2002) 95 Cal.App.4th 829, 832
. . . ['Standing arises from a breach of the duty of confidentiality owed to the complaining
party, regardless of whether a lawyer-client relationship existed.'].)"  (*Blue Water*, at
p. 485.)

　　　　In *Dino*, the court questioned "whether the issue is properly framed as one of
standing," but agreed "that some sort of confidential or fiduciary relationship must have
existed before a party is entitled to prevail on a motion to disqualify an attorney
*predicated on the actual or potential disclosure of confidential information*."  (*Dino*,
*supra*, 145 Cal.App.4th at p. 353, italics added.)  Although the parties and the trial court
in *Dino* had framed their analysis in terms of whether the appellants had standing to
move to disqualify, the appellate court preferred to frame the analysis in terms of whether
the appellants "were entitled to prevail on a motion seeking [the attorney's]
disqualification."  (*Id.* at p. 353, fn. 2.)  The court explained, "Generally, standing refers
to an aggrieved party's right to bring an action in the first instance, rather than an existing
party's right to bring a motion seeking some sort of relief from the trial court.
([Citations]; see also *Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 439–

16

440 & fn. 3 . . . ['a party who has standing to bring an action has standing to seek available provisional relief in that action']; *Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles* (2006) 136 Cal.App.4th 119, 128 . . . ['Standing goes to the existence of a cause of action [citations]'].)" (*Dino*, at p. 353, fn. 2.)

Applying the analytical framework from *Dino* here, we conclude that James was not required to have an attorney-client relationship with Roscoe to move to disqualify him. As we have noted, James's motion to disqualify was not based on simultaneous or successive representation, but rather on Roscoe's lack of authority to act on behalf of the Partnership in the first place. Whether James had an expectation of loyalty or confidentiality is not the issue here. Because this case is predicated on attorney Roscoe's alleged lack of authority to act on behalf of the Partnership, James was required to demonstrate that he had an interest in the question of whether Roscoe was properly authorized to represent the Partnership. We conclude that since a majority of the partners has not agreed to retain Roscoe (§ 15904.06, subd. (a)), James, a general partner who owns 50 percent of the Partnership, has a sufficient interest to challenge Roscoe's authority to act in this case.

*Johnson v. Superior Court* (1995) 38 Cal.App.4th 463 (*Johnson*), which is not an attorney disqualification case, supports our conclusion. In *Johnson*, the limited partners of a limited partnership sued the general partner and the attorney who represented the partnership for fraud. The trial court granted the attorney summary adjudication on the issue of duty. The appellate court granted the limited partners' petition for writ of mandate and directed the trial court to vacate the order. The court acknowledged the rule from *Responsible Citizens* that "mere representation of a partnership does not per se constitute representation of the individual partners" and reviewed the factors enumerated in that case to determine whether the attorney had formed an attorney-client relationship with the limited partners. (*Id.* at pp. 476-478.) The limited partners alleged that in the course of representing the partnership, the attorney performed services that benefitted the

17

general partner to the detriment of the partnership, which violated the attorney's duty of care and loyalty to the partnership. (*Id.* at p. 478.) The court noted that the partnership would have had a cause of action against the attorney and that if the general partner failed to bring the action, then the limited partners could have brought a derivative action under former section 15702 or a direct action in equity. (*Ibid.*) The court held that the undertaking by the attorney to represent the partnership, "imposed upon him an obligation of loyalty to the partnership and to all partners in terms of their entitlement to benefits from the partnership. Whether this constituted [him] an attorney, literally, for the individual limited partners, is of no great moment. He had a duty to the partnership to look out for all the partners' interests, and if this could not be accomplished because of conflicts of interest among them he had a duty to terminate the representation (or obtain appropriate waivers of the conflict)." (*Id.* at p. 479, footnote omitted.) Thus, if Roscoe's duty to act in the best interest of the Partnership is designed to protect the interests of all the partners, then James has an interest in disqualifying Roscoe if he believed his actions would deplete partnership assets, or Roscoe would act to place Todd's interests ahead of the Partnership's.

In summary, we conclude that because this is not a conflict of interest case, James was not required to have an attorney-client relationship with Roscoe to move to disqualify him. Since James moves to disqualify Roscoe based on a lack of authority for Roscoe to act on behalf of the Partnership, we conclude that because a majority of the partners have not agreed to retain Roscoe and James is a general partner with a 50 percent ownership interest in the Partnership and because Roscoe owed a duty to protect the Partnership's interests, which benefits all of the partners, James's interest was sufficient to challenge Roscoe's authority to represent the Partnership. For these reasons, we reject the Defendants' contention that James did not have "standing" to move to disqualify Roscoe. We thus consider the merits of the disqualification of Roscoe.

18

### E. The <u>*Coldren*</u> Case

Defendants argue that the trial court's order disqualifying Roscoe as counsel for the Partnership should be reversed because James gave up the right to control the Partnership's defense when he sued it for partition. Relying on *Coldren v. Hart, King & Coldren, Inc.* (2015) 239 Cal.App.4th 237 (*Coldren*), Defendants contend that *Coldren* is "strikingly similar to the matter at bar" and "addressed the core issue presented" here. Defendants rely on the court's statement in the introduction that a plaintiff cannot " 'sue his company and then, because he is a 50 percent shareholder, have a say in its defense' " (*id*. at p. 241).

*Coldren* arose out of a dispute between two equal shareholders in a corporation. Robert Coldren owned 50 percent of the shares in Hart, King & Coldren, Inc. (HKC), a law firm. William Hart owned the other 50 percent interest in HKC. Both were officers and directors of the corporation. (*Coldren*, *supra*, 239 Cal.App.4th at p. 241.) After Coldren announced his intent to retire, the two shareholders and the corporation entered into a written agreement governing the terms of his departure. As part of that agreement, Coldren resigned from his position as an officer and director of the corporation. (*Id.* at pp. 241-242.) One year later, Coldren sued Hart and HKC for involuntary dissolution, breach of the shareholder agreement and the departure agreement, and other claims, seeking $8 million in damages. Hart and HKC filed a cross-complaint that alleged, among other things, that in spite of promises not to compete and to transition Coldren's clients to HKC, Coldren was stealing clients and opening a practice in direct competition with HKC. (*Id.* at pp. 242-243.) Hart and HKC were jointly represented by the law firm Grant Genovese (GG). Coldren brought a motion to disqualify GG on the ground that it was improper for Hart to direct HKC to sue Coldren. The trial court granted the motion, finding an actual conflict of interest in GG's representation of both Hart and the corporation. The trial court ordered the shareholders to select neutral counsel for HKC and stated that if they did not select neutral counsel, the court would appoint counsel.

(*Id.* at pp. 243-244.)  Hart and HKC appealed, arguing in part that there was no disqualifying conflict between Hart and HKC.  The appellate court agreed and reversed the order disqualifying GG.  (*Id.* at pp. 241, 245, 252.)

The court began "by setting forth the legal principles governing the disqualification of an attorney *based on a conflict*" *of interest*.  (*Coldren*, *supra*, 239 Cal.App.4th at p. 248, italics added.)  This included:  (1) case law; (2) former rule 3-310(C) of the State Bar Rules of Professional Conduct,[7] which requires the attorney who represents more than one client to obtain the informed written consent of each client when the clients' interests potentially or actually conflict; (3) former rule 3-600,[8] which governed how an organization gives informed consent for dual representation; and (4) formal opinion No. 1999-153 of the State Bar of California Committee on Professional Responsibility and Conduct, which interpreted these rules in circumstances similar to those presented in *Coldren*.  (*Coldren*, at pp. 248-250.)  The *Coldren* court concluded that Hart and HKC did not " 'have opposing interests in the lawsuit which [GG] would have a duty to advance simultaneously for each' " and noted that neither Coldren nor the trial court had identified any such interests.  (*Id.* at p. 250.)  Thus, there was no conflict of interest that precluded GG from representing both Hart and the corporation.  (*Ibid.*)

---

[7] Further rules citations are to the State Bar Rules of Professional Conduct.  Under new rules that were adopted by the Board of Trustees of the State Bar in September 2018 and approved by the Supreme Court with revisions effective November 1, 2018, former Rule 3-310(C) has been renumbered Rule 1.7.  (2 Standard California Codes 6-in-2 (2019 ed.) Rules of Professional Conduct, pp. i, vi, 6-7 (Standard Codes).)

[8] Former Rule 3-600 has been amended and renumbered Rule 1.13, effective November 1, 2018.  (Standard Codes, *supra*, p. vi.)  Rule 1.13 provides:  "*A lawyer employed or retained by* an organization shall conform his or her representation to the concept that the client is the organization itself, acting through its *duly* authorized *directors*, officer*s*, employee*s*, *members, shareholders or other* constituents overseeing the particular engagement."  (Changes in the wording of the rule have been italicized.)

Defendants' reliance on *Coldren* is misplaced. As we have noted, disqualification motions occur most commonly in the context of *conflicts of interests between clients*: when counsel's simultaneous representation of a *current* client is adverse to the interests of another *current* client or when counsel's successive representation of a *current* client is adverse to the interests of a *former* client and, by reason of the former representation, the attorney obtained confidential information material to the current representation. (*SpeeDee Oil*, *supra*, 20 Cal.4th at pp. 1146-1147; *Responsible Citizens*, *supra*, 16 Cal.App.4th at pp. 1723-1725.) Neither of those concerns are implicated here. Unlike *Coldren*, this is not a conflict of interest case. Roscoe has only one client: the Partnership. He does not simultaneously represent the Partnership and James (or Todd). In addition, there was no allegation that he formerly represented James, which could have resulted in the potential adverse use of confidential information. Since this case does not involve the dual representation of the Partnership and a partner, Coldren's holding as to who may consent to such representation does not apply. The issue here is Roscoe's lack of authority *ab initio* to act for the Partnership, and how to resolve a conflict of authority within the Partnership that renders the attorney incapable of acting on the matter in dispute. Neither James nor Defendants cite any cases or other legal authority involving a motion for disqualification based on counsel's lack of authority to act for an entity client or a conflict of authority within a partnership or other entity client. As our independent research has not discovered any cases discussing this question, we turn to other sources to determine whether the trial court abused its discretion when it ordered Roscoe disqualified.

## F. *State Bar Opinion No. 1994-137, Partnership Agreements & the ULPA*

Rules of ethics are one of the tools courts utilize when deciding whether disqualification is necessary to preserve the integrity of the of the judicial process. (*In re Complex Asbestos Litigation* (1991) 232 Cal.App.3d 572, 586.) Under the State Bar Rules of Professional Conduct, an attorney who represents a partnership must treat the

21

partnership itself as the client and need not undertake representation of the partners individually. (Rule 1.13(a); former rule 3-600(A); *Responsible Citizens*, *supra*, 16 Cal.App.4th at pp. 1729-1730.) This flows from the rule established in the Uniform Limited Partnership Act of 2008 (§§ 15900 et seq., hereafter ULPA), that a "limited partnership is an entity distinct from its partners." (§ 15901.04, subd. (a).) "A limited partnership has the powers to do all things necessary or convenient to carry on its activities, including the power to sue, be sued, and defend in its own name and to maintain an action against a partner for harm caused to the limited partnership by a breach of the partnership agreement or violation of a duty to the partnership." (§ 15901.05.)

The State Bar of California Standing Committee on Professional Responsibility and Conduct (the Committee) formal opinion No. 1994-137 (State Bar Opn. 1994-137) provides some guidance regarding an attorney's ethical considerations when undertaking the representation of a partnership. It addresses "a lawyer's ethical duties when in the course of representing a partnership the lawyer receives conflicting instructions from two of the partners in circumstances where it is unclear which partner's instruction the lawyer must follow." (State Bar Opn. 1994-137.)

The Committee notes that former Rule 3-600(A), which applies to partnerships, "states that in representing an organization, '. . . a member shall conform his or her representation to the concept that the client is the organization itself, acting through its highest authorized officer, employee, body, or constituent overseeing the particular engagement.' . . . [¶] Accordingly, in representing a partnership a lawyer represents the partnership itself acting through the partner authorized to oversee the representation. Ordinarily, that means that the lawyer representing a partnership takes direction from its general partner, since limited partners cannot take part in the control of the partnership and retain the limited liability of a limited partner. [Citations.] However, in determining who oversees the representation in any given situation, a lawyer must conform to the

22

requirements of the applicable statutes, the partnership agreement and any other pertinent agreements between the partners.  [Citation.]"  (State Bar Opn. 1994-137, citing *Responsible Citizens*, *supra*, 16 Cal.App.4th 1717, footnotes omitted.)

Lack of clarity over who is authorized to oversee the engagement of the attorney for the partnership places the lawyer "in a position where he or she cannot follow one partner's instruction without violating the other partner's instruction.  It is not a conflict of interest, because the lawyer has only one client, the partnership.  It is, instead, a conflict of authority within the partnership over who oversees and instructs the partnership's lawyer."  (State Bar Opn. 1994-137.)  The Committee opines that a "lawyer in this situation is adrift in perilous waters.  The lawyer's duty of loyalty requires the lawyer to act at a client's direction.  A lawyer cannot act without the client's authorization.  Nor can the lawyer take over the decision making for a client absent authority to do so.  At the same time, a lawyer has a duty to competently represent the partnership as a client" and "cannot abdicate [that duty] in the face of a dispute among the partners."  (State Bar Opn. 1994-137.)  The Committee concludes that "a lawyer caught in this situation must first determine whether the partnership agreement or applicable law provide an answer as to who has the authority to instruct counsel.  For example, if the partnership agreement states which partner has the authority to oversee the representation, the lawyer must conform the representation to those provisions and take instruction from that partner."  (State Bar Opn. 1994-137.)  This is consistent with section 15901.10, subdivision (a), which provides that subject to exceptions enumerated in subdivision (b), "the partnership agreement governs relations among the partners and between the partners and the partnership," and if the partnership agreement is silent, the ULPA governs such relations.

"While [former] rule 3-600 instructs a lawyer to take actions as appear to be in the best interests of the organization, a lawyer must recognize the limits of his or her function.  A lawyer must be careful to maintain the role as a servant of the partnership

23

and not assume the client's role in the lawyer-client relationship. Thus, the lawyer may render advice which he or she believes is in the best interests of the partnership. However, the lawyer cannot make decisions which are the partnership's to make. [¶] . . . [W]here the lawyer cannot reasonably determine which partner's instruction the lawyer may follow, the lawyer cannot take any action for the partnership in connection with the matters in dispute, until the dispute is resolved. . . . If the lawyer reasonably believes that he or she cannot effectively represent the partnership, the lawyer may withdraw." (State Bar Opn. 1994-137, footnote omitted.)

Although the Committee's opinion concludes by saying it is not binding on the courts, the opinion provides a helpful analytical framework. It suggests that in determining who has the authority to select counsel and direct the Partnership's defense, we look first to the terms of the partnership agreement.[9] Here, the Partnership agreement is silent on this point. It does not delegate the selection of counsel or decision-making regarding litigation to either of the general partners. It does not say what happens when the general partners are deadlocked. When the Partnership was formed, there was only one general partner—who had the right to make decisions for the Partnership—and three limited partners. With that structure, no one envisioned deadlock. There is no evidence the partnership agreement was amended to address the possibility of deadlock after the brothers each acquired a 50 percent ownership interest in the Partnership.

In the absence of direction from the partnership agreement, the Committee's opinion directs us next to applicable partnership law. The motion to disqualify was based on section 15904.06, subdivision (a), which is part of the ULPA. It provides: "Each

---

[9] In support of his demurrer, Todd asked the trial court to judicially notice the partnership agreement and other documents related to the ownership of Jarvis Properties. The trial court properly denied the request for judicial notice in the context of Todd's demurrer. However, James attached a copy of the partnership agreement as an exhibit to the complaint in Case No. 1295, and we have granted Todd's request to judicially notice the complaint in that case.

24

general partner has equal rights in the management and conduct of the limited partnership's activities. Except as expressly provided in this chapter, any matter relating to the activities of the limited partnership may be exclusively decided by the general partner or, if there is more than one general partner, by a majority of the general partners." We understand the term "majority" here to mean more than 50 percent. (See § 15901.02, subds. (s), (t), (v)(3).) Neither Todd nor James alone constitutes a majority of the general partners sufficient to decide matters relating to the Partnership, including the selection of counsel and the conduct of the litigation. Thus, neither the partnership agreement nor the applicable UPLA statutes resolve the issue of whether Roscoe's representation of the Partnership is authorized or lawful.

Defendants argue that the trial court's reliance on section 15904.06, subdivision (a) was misplaced. They argue that filing an action to "force the sale" of the Partnership's "sole property" falls under the "unanimous consent requirement" of section 15904.06, subdivision (b), which provides in relevant part: "[t]he consent of each partner is necessary to: [¶] . . . [¶] (2) sell, lease, exchange, or otherwise dispose of all, or substantially all, of the limited partnership's property, . . . , other than in the usual and regular course of the limited partnership's activities." In our view, Defendants' reliance on section 15904.06, subdivision (b) is misplaced. The issue presented by the motion to disqualify Roscoe is who has the authority to select and direct counsel on behalf of the Partnership, not who has the authority to sell or otherwise dispose of partnership property. Defendants have conflated the question of authority to sell the Adjacent Parcel—which they raised in their demurrers and which is not before us in this appeal— with the question of authority to select and direct counsel.

In their reply brief, Defendants also raise, for the first, time two arguments based on the statutory construction of section 15904.06, subdivision (a) and assert that under a different provision of the ULPA, Todd had the authority to unilaterally retain Roscoe. First, they argue that the majority rule in section 15904.06, subdivision (a) is qualified by

25

the phrase "[e]xcept as expressly provided in this chapter" and that section 15904.02—a different statute in the same chapter—which they contend gives "each partner the power to act as an agent and bind the limited partnership in the ordinary course of business"— applies here. Second, they argue that by using the word "may" in the phrase "*may* be exclusively decided by . . . a majority of the general partners" in section 15904.06, subdivision (a), the Legislature realized that there may be situations where less than a majority of general partners should be deciding the activities of the partnership, including when a partner sues the partnership. They do not cite any legal authority supporting these points and their description of section 15904.02 is cursory. Since these arguments were "neither timely nor fully made," and Defendants have not explained why they were not raised before, and James has not had an opportunity to respond, we will not address them further. (*Julian v. Harford Underwriters Ins. Co*. (2005) 35 Cal.4th 747, 761, fn. 4 [points raised for the first time in a reply brief will not be considered, unless good reason is shown for failing to present them before]; *Tellez v. Rich Voss Trucking, Inc*. (2015) 240 Cal.App.4th 1052, 1066 [obvious considerations of fairness demand that the appellant present all points in the opening brief; withholding a point until the reply deprives the respondent of an opportunity to answer it].)

### G. Ethical Considerations

With no clear resolution from the partnership agreement or partnership law, we return to the Supreme Court's discussion of the values and interests at stake in a disqualification motion. The "paramount concern" in evaluating a motion to disqualify counsel "must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar." (*SpeeDee Oil*, *supra*, 20 Cal.4th at p. 1145.) The primary fiduciary values at stake in *conflict of interest cases* are the client's right to confidentiality and the attorney's duty of loyalty. (*Charlisse C*., *supra*, 45 Cal.4th at pp. 159-160.) While we have noted this is not a conflict of interest case, in our view

26

James has raised legitimate points regarding Roscoe's duty of loyalty, not as between multiple clients, but as to his representation of the Partnership. Since Todd selected Roscoe, is paying Roscoe, and is directing the litigation, there is the appearance that Roscoe may advance Todd's interests over James's interests, which may not necessarily be in the best interests of the Partnership. Despite Roscoe's declaration that he represents the Partnership, and not Todd, James also raises legitimate concerns that Roscoe will not act in the Partnership's best interests by running up unnecessary litigation costs that will deplete the Partnership's assets and adversely impact James's ownership interest in the Partnership.

As noted in State Bar Opinion 1994-137, an additional concern is whether Roscoe has stepped outside his role as counsel for the Partnership. An organizational client acts through its "duly authorized directors, officers, employees, members, shareholders of other constituents overseeing the particular engagement." (Rule 1.13(a); see also former rule 3-600 [organization acts "through its highest authorized officer, employee, body or constituent"].) "An organizational client can only act through individuals who are authorized to conduct its affairs" and it "is not within the lawyer's province to make decisions on behalf of the organization concerning policies and operations." (Comment to Rule 1.13, Standard Codes, p. 11.) Roscoe asserted below that "neither partner should participate [in] or direct the Partnership defense. . . ." In contravention of the authorities cited above, by eschewing direction from either partner, Roscoe may have assumed the client's role in the attorney-client relationship. The fact that Roscoe took the position that he could represent the Partnership without direction from either partner is troubling in light of the relevant law under the ULPA and guidance provided by the State Bar.[10]

---

[10] We recognize that there is limited legal authority and guidance for counsel regarding the legal and ethical issues raised in this case. We accept Roscoe's representation at oral argument that he investigated the legal and ethical questions raised by his representation of the Partnership in good faith.

27

We note also that although James has filed a direct action for partition of partnership property, some of his concerns in the disqualification motion are derivative in nature: protecting the Partnership's assets from being squandered on unnecessary litigation and insuring that partnership counsel acts in the best interests of the Partnership.

We are persuaded that James has demonstrated a risk that Roscoe, who is being paid by Todd and directed by Todd, may advance Todd's interests; that his representation may not be in the best interests of the Partnership, and may unnecessarily deplete the Partnership's assets. Additionally, Roscoe has stated that he believes he can act on behalf of the Partnership without direction from either of the partners in contravention of Rule 1.13. These factors support our conclusion that the trial court did not err as a matter of law and acted within its discretion when it granted the motion to disqualify Roscoe as counsel for the Partnership.

### H. *Additional Values and Interests at Stake on Motion to Disqualify*

Having determined that the factors discussed above support the trial court's decision to grant the motion to disqualify, we consider whether there are values and interests that militate against the trial court's decision to disqualify Roscoe. "A motion to disqualify a party's counsel may implicate several important interests. Consequently, judges must examine these motions carefully to ensure that literalism does not deny the parties substantial justice. [Citation.] Depending on the circumstances, a disqualification motion may involve such considerations as a client's right to chosen counsel, an attorney's interest in representing a client, the financial burden on a client to replace disqualified counsel, and the possibility that tactical abuse underlies the disqualification motion. [Citations.] Nevertheless, determining whether a conflict of interest requires disqualification involves more than just the interests of the parties." (*SpeeDee Oil*, *supra*, 20 Cal.4th at pp. 1144-1145.) "Ultimately, disqualification motions involve a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility. [Citation.] The paramount concern must be to

28

preserve public trust in the scrupulous administration of justice and the integrity of the bar.  The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process.  [Citations.]"  (*SpeeDee Oil*, at p. 1145.)

*SpeeDee Oil* recognized the "client's right to chosen counsel" as one of "several important interests" implicated in a motion to disqualify counsel.  (*SpeeDee Oil*, *supra*, 20 Cal.4th at p. 1145.)  Defendants argue that under former Rule 3-600, *Coldren*, and State Bar Opinion 1999-153 (which the court relied in *Coldren*), James is not an appropriate person to consent to Roscoe's representation of the Partnership.  They argue that under *Coldren*, James cannot sue the Partnership and then have a say in its defense or who its lawyer should be.  By analogy to *Coldren*, they argue that if James is not the appropriate constituent of the Partnership to consent to the joint representation of Todd and the Partnership, then James is also not an appropriate constituent to consent to Roscoe representing the Partnership.

James responds that unlike Coldren, who resigned as a director of HKC and relinquished all authority to make corporate decisions to Hart, he (James) never relinquished his equal right to manage the Partnership.  He asserts that if Coldren had not resigned, then the directors in that case would have been deadlocked, and Hart would not have been able to hire counsel unilaterally.  He also suggests that Hart would have been able to seek relief under section 308, which authorizes the court to appoint a provisional director to break corporate deadlocks.  We agree that *Coldren* is factually distinguishable on this basis.  But *Coldren* was a conflicts of interest case and therefore did not discuss whether Hart had the authority to unilaterally consent to joint representation with HKC.

James also asserts that unlike Coldren, who sued HKC for damages, the partition action he filed seeks a remedy that is in the best interests of the Partnership and the partners.  He argues that the "brothers . . . have been embroiled in ongoing litigation for the past 16 years.  They must disentangle from each other and disposing of these two

properties is necessary to achieve that end." He argues they have an opportunity to maximize the value of the Two Parcels by selling them together and to convert the "unproductive" Adjacent Parcel "into more cash" than if it were sold alone. He asserts that it would be a breach of their fiduciary duties for the general partners not to sell the properties together. James argues Roscoe is acting "solely at the direction of Todd," and "simply pursuing Todd's agenda[,] which [James] believes to be injurious to the interests of the Partnership." We agree that this lawsuit is distinguishable from *Coldren* on this basis and that this distinction should be considered in evaluating this appeal. In addition, the motion to disqualify Roscoe appears to have been filed in best interests of the Partnership by seeking to avoid assertedly unnecessary and duplicative attorney fees.

In *SpeeDee Oil*, the Supreme Court also identified the financial burden on the client to replace disqualified counsel as an important interest implicated by a motion to disqualify. (*SpeeDee Oil*, *supra*, 20 Cal.4th at pp. 1144-1145.) James filed the motion immediately after the Partnership made its first appearance. Roscoe's work consists primarily of filing papers in support of the demurrer and in opposition to the motion to disqualify him, appearing at the hearing on the demurrer and the motion, and contributing to the joint briefs filed on appeal by Todd and the Partnership, and appearing at oral argument. Since Roscoe was disqualified at the earliest stage of the litigation, the cost of replacing him will be lower than if the motion to disqualify had been made at a later stage. Todd and the Partnership do not complain of the cost of replacing Roscoe. And although he is concerned about costs, James does not complain of the cost of replacing Roscoe. His concern is that *not replacing* Roscoe will cause the cost of the litigation to skyrocket. This is based on the fact that Todd retained Roscoe, is paying Roscoe, and may be directing Roscoe's handling of the litigation. Based on Todd's actions in the trust

litigation, there may be grounds for such a concern.[11]  Moreover, based on his counsel's comments at oral argument, it appears undisputed that Jarvis Properties will have to reimburse Todd for any payments he makes to Roscoe (§ 15904.06, subd. (c)), which potentially depletes the Partnership's assets and decreases its value to both Todd and James.  In our view, James's interest, as a general partner, in controlling the Partnership's litigation costs is an important interest in the circumstances of this case, analogous to the financial burden of the client identified in *SpeeDee Oil*.

We also consider whether tactical abuse underlies the motion and examine whether the motion was misused to harass opposing counsel, to delay the litigation, or to intimidate an adversary into accepting settlement on terms that would not otherwise be acceptable.  (*SpeeDee Oil*, *supra*, 20 Cal.4th at p. 1145; *Gregori*, *supra*, 207 Cal.App.3d at p. 301.)  The record suggests the motion to disqualify was filed to prevent unnecessary expenditure of the Partnership's assets on litigation.  Nothing here suggests James intended to delay the litigation.  Indeed, he filed the motion at the first available opportunity.  James alleges that after the partners were unable to agree on how to manage the Two Parcels, he filed the partition action as the most efficient way of getting the Two Parcels sold together to maximize their value.  Nothing here supports the conclusion that the motion to disqualify was filed for an improper purpose.

Having reviewed the important interests and factors that our Supreme Court described in *SpeeDee Oil*, we conclude that the trial court did not err when it granted the motion to disqualify attorney Roscoe.  The most important of these factors are the

---

[11] For example, in a petition filed in the trust litigation, the trustee told the court that although Todd had originally nominated him as trustee, Todd had become increasingly hostile toward the trustee, which dramatically increased the costs of trust administration.  In his August 2015 petition to terminate the trust and distribute the trust proceeds, the trustee asked the court to allocate over $1 million of the cost of trust administration to Todd and alleged Todd's deliberate bad faith attempts to interfere with trust administration had caused fees and costs to skyrocket.

"ethical considerations that affect the fundamental principles of our judicial process."
(*SpeeDee Oil*, *supra*, 20 Cal.4th at p. 1145.)  The trial court's order reflects an
appropriate sensitivity to the ethical challenges posed by Roscoe's representation of the
Partnership, and its issuance was well within the court's discretion.

### I.     *Alternatives to Representation*

We next address the question of alternatives to representation by Roscoe.
Defendants argue that the alternatives to having Roscoe represent the Partnership that
James suggested are improper, prejudicial, and inconsistent with the court's order on the
demurrer in Case No. 1295.  Those alternatives included stipulating to an appearance by
the Partnership and allowing the brothers to litigate the matter, or appointing a tie-
breaking provisional partner, neutral counsel, or a receiver.  The court's order does not
say which, if any, of these alternatives it selected.

The Corporations Code provides a mechanism for breaking corporate deadlocks.
When a *corporation* "has an even number of directors who are equally divided and
cannot agree" on the management of corporate affairs so that the corporation's "business
can no longer be conducted to advantage" or there is "a danger that its property or
business will be impaired or lost," section 308, subdivision (a), authorizes a court to
appoint a "provisional director" to break the deadlock, regardless of the terms of the
articles or the bylaws and whether or not an action for involuntary winding up or
dissolution of the corporation is pending.  An action for such appointment may be
brought by any director or by the holders of not less than one third of the voting power in
the corporation.  (§ 308, subd. (a).)  The provisional director "acts as a 'tiebreaker' when
a deadlock exists . . . ."  (*In re ANNRHON, Inc*. (1993) 17 Cal.App.4th 742, 751.)

There are no comparable provisions in the ULPA that authorize a court to appoint
a provisional general partner in the case of a deadlocked limited partnership.  But
section 15901.07, subdivision (a), which is part of the ULPA, says that "[u]nless

displaced by particular provisions of [the ULPA], the principles of law and equity supplement [the ULPA]." The parties have not briefed the question whether the court had the authority in equity to appoint a provisional partner to break deadlocks pending resolution of the litigation.

James argues: "Todd is already a party to the action, and can voice his opposition in as full-throated a manner as he so chooses. As discussed below, the Partnership can also be represented should the trial court require it. However, that attorney cannot be hired and directed by either Jim or Todd alone as neither has the requisite power to do so. Before counsel could be hired, there would need to be a break in the deadlock on an entity level. The trial court, acting in equity, is in the best position to determine how that can best be achieved."

Based on their briefing below, we conclude there is substantial evidence that the brothers, who represent opposing views on the propriety of the partition action, can adequately articulate their positions and guide the trial court in determining what is in the best interests of this two-person partnership. There are no other general partners or limited partners whose interests might conflict with the brothers' interests in the Partnership. James's counsel stated at oral argument that James had no intention of taking the Partnership's default. And as we have noted, by filing a demurrer, the Partnership has prevented its default from being taken.

In the unique circumstances of this case, we conclude the trial court did not err as a matter of law, and therefore did not abuse its discretion when it granted the motion to disqualify attorney Roscoe. Since this is an equitable action for partition, and given the court's inherent power to "control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it" (Code Civ. Proc., § 128, subd. (a)(5)), we leave it to the trial court to fashion the appropriate remedy. The trial court may decide that the brothers can adequately articulate the issues presented in this partition action and that the Partnership therefore

33

does not require separate counsel. However, the court may wish to explore options for resolving deadlock at the entity level and consider the appointment of a receiver, neutral counsel, or other neutral to protect the interests of the partners and the Partnership. Again, that is for the trial court to decide in the exercise of its inherent and equitable powers.

## III. DISPOSITION

The trial court's order on the motion to disqualify attorney Roscoe is affirmed.

_____

Greenwood, P.J.

WE CONCUR:


_____

Elia, J.


_____

Danner, J.


Jarvis et al. v. Jarvis et al.
No. H044930

Trial Court:                          Monterey County Superior Court
                                      Superior Court No.: 16CV002928

Trial Judges:                         The Honorable Susan J. Matcham


Attorneys for Plaintiff and Respondent,    Fenton & Keller, PC
JAMES ALVIN JARVIS, Individually and       John E. Kesecker
as Trustee, etc.:                          Angus J. Cannon
                                           Dennis G. McCarthy


Attorneys for Defendant and Appellant,     Parker Law Group
TODD HENRY JARVIS:                         Port J. Parker
                                           Jeffrey S. Einsohn


Attorney for Defendant and Appellant,      William P. Roscoe, III
JARVIS PROPERTIES, L.P.:


Jarvis et al. v. Jarvis et al.
H044930